Law Offices of
Magyar, Rauch & Associates, PLLC
Gregory R. Rauch ISB#7389
326 East Sixth Street
Moscow, Idaho 83843
Tel: (208) 882-1906
rauch@mralegal.com
holt@mralegal.com
*Local Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| **NATHAN DAVID WILSON**, on his own behalf and as legal guardian and next friend of S.J.W., a minor; **S.J.W.**, a minor, and **RORY DOUGLAS WILSON**,<br><br>        Plaintiffs,<br><br>    v.<br><br>**CITY OF MOSCOW, IDAHO**; **MIA BAUTISTA**, in her official capacity as City Attorney, City of Moscow, Idaho; **LIZ WARNER**, in her official capacity as Prosecuting Attorney, City of Moscow, Idaho; **JAY WATERS**, individually and in his official capacity as a police officer, City of Moscow Police Department, City of Moscow, Idaho; **SHAINE GUNDERSON**, individually and in his official capacity as a police officer, City of Moscow Police Department, City of Moscow, Idaho; and **MITCH NUNES**, individually and in his official capacity as a police officer, City of Moscow Police Department, City of Moscow, Idaho,<br><br>        Defendants. | Case No. 3:22-cv-421-CWD<br><br><br><br>**FIRST AMENDED COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Nathan David Wilson, S.J.W., and Rory Douglas Wilson (collectively referred to as "Plaintiffs"), by and through their undersigned counsel, bring this First Amended Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.      This case seeks to protect and vindicate fundamental rights.  It is a civil rights action brought under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' unlawful actions and selective enforcement of the law that were motivated by Defendants' hostility toward Plaintiffs and their political and religious viewpoints and religious beliefs.

2.      Plaintiffs seek a declaration that Defendants' actions violated Plaintiffs' clearly established rights as set forth in this First Amended Complaint; a declaration that the City Ordinance, facially and as applied to restrict Plaintiffs' speech, violates Plaintiffs' clearly established rights; a preliminary and permanent injunction enjoining the enforcement of the City Ordinance and Defendants' policy and/or practice of targeting Plaintiffs for adverse treatment and retaliatory and selective enforcement of the law based on Plaintiffs' political and religious viewpoints and religious beliefs; and nominal and compensatory damages.  Plaintiffs also seek an award of their reasonable costs of litigation, including attorneys' fees and expenses.

## JURISDICTION AND VENUE

3.      This action arises under the Constitution and laws of the United States.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

5.      Plaintiffs' claim for damages (nominal and compensatory) is authorized under 42 U.S.C. § 1983 and by the general legal and equitable powers of this Court.

6.      Plaintiffs' claim for an award of their reasonable costs of litigation, including

attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988, and other applicable law.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PLAINTIFFS

8.      Plaintiff Nathan David Wilson is an adult citizen of the United States and a resident of Idaho.  He is the father of Plaintiffs Rory Wilson and S.J.W. and legal guardian of Plaintiff S.J.W., a minor.

9.      Plaintiff S.J.W. is a minor.  He is a citizen of the United States, a resident of Idaho, and the minor son of Plaintiff Nathan David Wilson.

10.      Plaintiff Rory Douglas Wilson is an adult citizen of the United States, a resident of Idaho, and the son of Plaintiff Nathan David Wilson.

## DEFENDANTS

11.      Defendant City of Moscow (hereinafter referred to as "City") is a municipal entity organized and existing under the laws of the State of Idaho.  It is a municipal corporation with the right to sue and be sued.

12.      The City and its officials, including Defendants Bautista, Warner, Waters, Gunderson, and Nunes (collectively referred to as "City defendants"), are responsible for creating, adopting, approving, ratifying, and enforcing the acts, ordinances, policies, practices, customs, and/or procedures causing harm to Plaintiffs, as set forth in this First Amended Complaint.

13.      The City, through its officials, including City defendants, enforces the challenged City Ordinance, acts, policies, practices, customs, and/or procedures, as set forth in this First Amended Complaint.

14.     The City is responsible for the training and supervision of the City's police officers, including Defendants Waters, Gunderson, and Nunes.

15.     The City's acts, ordinances, policies, practices, customs, and/or procedures were the moving force behind the constitutional violations set forth in this First Amended Complaint.

16.     Defendant Mia Bautista is the City Attorney.  Defendant Bautista possesses final policymaking authority for the City to decide who to prosecute.  She is responsible for the selective enforcement of the City's ordinances and the selective prosecution of Plaintiffs as set forth in this First Amended Complaint.  At all relevant times, Defendant Bautista was acting under color of state law.  Defendant Bautista is sued in her official capacity.

17.     At all times relevant, Defendant Liz Warner was the prosecuting attorney for the City.  In that capacity, Defendant Warner possessed final policymaking authority for the City to decide who to prosecute.  Accordingly, she was responsible for the selective enforcement of the City's ordinances and the selective prosecution of Plaintiffs as set forth in this First Amended Complaint.  At all relevant times, Defendant Warner was acting under color of state law.  Defendant Warner is sued in her official capacity.

18.     Defendants Jay Waters, Shaine Gunderson, and Mitch Nunes are police officers with the City Police Department.  At all relevant times, Defendants Waters, Gunderson, and Nunes were acting under color of state law.  Defendants Waters, Gunderson, and Nunes are sued individually and in their official capacities.

### STATEMENT OF FACTS

19.     In 2020, during the COVID-19 pandemic, the City imposed draconian restrictions on fundamental liberties, including, *inter alia*, restrictions on private gatherings and mask mandates.  The restrictions were tyrannical and useless.

20.     In early September 2020, Plaintiff Rory Wilson was threatened with arrest by City police officers because he was allegedly standing too close to his cousin without a mask.  Plaintiff Rory Wilson and his cousin were outdoors at the time.

21.     On or about September 23, 2020, Plaintiffs Rory Wilson and S.J.W. participated in an outdoor Psalm sing organized by their grandfather, Douglas Wilson, who is the pastor of Christ Church, which is a large, conservative, Christian church located in the City.

22.     Members of the Christ Church engaged in the Psalm sing to protest the City's draconian COVID-19 lockdown orders, which were issued without public consent while ignoring public input.  The Psalm sing protest took place in the outdoor parking lot of the Moscow City Hall.

23.     Despite the fact that the City's COVID-19 orders exempted religious activities, City police officers arrived and began making arrests.  Charges were filed against the arrested participants, but they were later dropped.

24.     The City established a slogan to justify their crackdowns, and City officials posted that slogan on signs around the City.  The City's slogan was "ENFORCED BECAUSE WE CARE."

25.     Before all charges against the Psalm-sing participants were dropped, Plaintiff Nathan Wilson assisted with creating decals to protest the City's draconian COVID-19 orders and their enforcement, including the arrests made at the Psalm sing because of these orders.  Plaintiff Nathan Wilson and his business partner paid for the decals because his partner's brother was one of the Psalm-sing participants arrested.

26.     The decals were small (most were 3 inches in size and some were 8 inches), made of vinyl, and were non-damaging.  That is, they were the type of decals that could be applied and

removed easily without causing any damage or leaving any residue.

27.     Some of the decals created stated, "SOVIET MOSCOW," and they included a hammer and sickle.  The majority of the decals bore an image of the hammer and sickle and stated, "SOVIET MOSCOW: ENFORCED BECAUSE WE CARE," in protest to the City's draconian and tyrannical COVID-19 orders (collectively referred to as "Soviet Moscow protest decals").  A true and correct copy of a Soviet Moscow protest decal appears below:



28.     On or about October 6, 2020, Plaintiff Rory Wilson and S.J.W. posted Soviet Moscow protest decals on City property, particularly at locations where other decals, stickers, and handbills were or have been posted in the past.  These locations include City light poles, parking poles, and signs.  Plaintiffs Rory Wilson and S.J.W. engaged in this expressive activity to protest the City's tyrannical COVID-19 orders.

29.     It is an accepted and routine practice in the small university City to post messages, specifically including commercial messages, political messages, and messages on matters of public interest, on poles and other City property throughout the City.  The City permits this practice and has created a forum for speech by doing so.

30.     Consequently, many poles in the City display hundreds of various decals and fliers

expressing commercial, political, and other public-issue messages.  In addition to permitting the use of the poles for expressing various messages, the City permits the posting of thousands of yard signs, lost pet fliers, and handbills with political and other public-issue messages at various public locations on a regular basis.  These practices have been permitted by the City for decades.  Below are true and correct pictures of the Soviet Moscow protest decals placed alongside other postings in the City, and these Soviet Moscow protest decal postings served as a basis for the arrests and/or prosecutions of Plaintiffs as set forth in this First Amended Complaint:

 

 

    31.    For example, a paper that circulates in the City twice covered a local man's City-wide flier-posting campaign to find his missing dog.  The "Aspen the lost dog" stories were front page headlines.  There were no arrests or complaints from the City or its officials, including Defendants, about this very public posting campaign.

32.     Other examples of permitted postings appear in the images below:

  

   

33.     On or about October 6, 2020, the City Police Department received a call reporting two people placing decals on poles and signs.  Defendants Gunderson and Nunes responded to the complaint on foot.  Defendant Waters responded in a squad car.

34.     Upon the arrival of the defendant police officers, Plaintiffs Rory Wilson and S.J.W. were walking on the public sidewalk.  The police officers summoned the two boys (S.J.W. was 14 at the time and Rory was 18), and the boys complied and walked to the officers.  Plaintiffs Rory Wilson and S.J.W. were respectful, and they did not attempt to flee.

35.     To comply with the "masking" order in effect at the time, Plaintiffs Rory Wilson and S.J.W. wore hijabs.  They chose hijabs as their mandated masks because if they were going to

be oppressed, they wanted to look oppressed.

36.     Upon the arrival of the defendant police officers, Defendants Gunderson and Nunes forcefully placed Plaintiff Rory Wilson in handcuffs, forced him to the ground, and proceeded to interrogate him.  Plaintiff Rory Wilson was not free to leave, and yet the officers did not advise him of his rights required by *Miranda* before interrogating him.  A true and correct image of officers placing Plaintiff Rory Wilson in handcuffs while his brother, Plaintiff S.J.W., observes and is interrogated by Defendant Waters appears below:



This image was taken from the police interrogation video that Defendants initially suppressed and failed to timely disclose to Plaintiffs.

37.     In consideration of the alleged crime (posting non-damaging, Soviet Moscow protest decals on poles, a practice long permitted by the City), the threat to the officers (none, as Plaintiff Rory Wilson was unarmed, and he was obedient and respectful throughout), the fact that Plaintiff Rory Wilson was not resisting arrest, and in light of the totality of the circumstances, the force used by Defendants Gunderson and Nunes against this youth was excessive.

38.     While Plaintiff Rory Wilson was being detained by Defendants Gunderson and Nunes, Plaintiff S.J.W. was moved away from his brother and placed on the squad car's brush guard where he was interrogated and threatened with a felony conviction by Defendant Waters. For prolonged periods of time, and in an effort to harass and intimidate the juvenile, Defendant

Waters positioned his tactical flashlight directly in Plaintiff S.J.W.'s face.  True and correct images of Defendant Waters shining his tactical flashlight directly into Plaintiff S.J.W.'s face during the officer's interrogation appear below:

 

This image was taken from the police interrogation video that Defendants initially suppressed and failed to timely disclose to Plaintiffs.

39.    Plaintiffs Rory Wilson and S.J.W. were accused of crimes and not free to leave. When the defendant police officers told Plaintiffs Rory Wilson and S.J.W. that they would be charged with felony destruction of property, Plaintiffs offered to remove all of the non-damaging decals, but were told by the officers that it was now too late.

40.    After detaining the two boys, Defendant Waters called Plaintiff Nathan Wilson to come pick up his sons.  When Plaintiff Nathan Wilson arrived, Defendant Waters confronted him, immediately telling Plaintiff Nathan Wilson that he didn't agree with the "messaging" of the decals.  Defendant Waters was visibly angry about the messaging.  Plaintiff Nathan Wilson told the officer that he wanted to go to his sons, who appeared in distress by their treatment, and Defendant Waters told him, "No, we are not done with them," or words to that effect.  Plaintiff Nathan Wilson especially wanted to go to his minor son and could not imagine why a parent would not be allowed to approach.

41.    When Defendant Waters asked Plaintiff Nathan Wilson if he had anything to do

with producing the decals, Plaintiff Nathan Wilson said, "I'm gonna go ahead and plead the Fifth on that one," or words to that effect, which further angered Defendant Waters.

42.     Defendant Waters eventually released the boys from his "custody"—Defendant Waters' language—into the custody of Plaintiff Nathan Wilson, and he told Plaintiffs that he would inform the City Attorney's office of the incident.

43.     The City later dispatched workers to remove the Soviet Moscow protest decals from the downtown area.  The workers only removed the Soviet Moscow protest decals and left every other decal, sticker, or poster in place, including stickers directly insulting Plaintiffs' Christian community.  Some of the insulting stickers included messages such as "F**k Christ Church," "All Kirkers Are Bastards" on a little blue cross sticker that imitates and thus mocks the church's logo, and "NSA GET OUT."  NSA is a Christian college associated with Christ Church, and Kirkers is a local nickname for members of Christ Church.  A true and correct picture showing the display of an "All Kirkers Are Bastards" sticker posted on a City pole appears below:



44.     Some of the insulting stickers that the City workers allowed to remain were placed on the same surfaces/locations as the Soviet Moscow protest decals.  The City also allowed other Left-leaning political messages such as "F**k Trump" and "Immigrants Welcome."

45.     Months later (March 2021) and following strong public opposition to the City and its officials for selectively enforcing the City's laws against Plaintiffs, the City sent street crews

out once again to clean the poles.  But even then, the City chose to leave stickers attacking Christ Church.

46.      Indeed, the discrimination against Plaintiffs and their church was so blatant, locals started a "Permitted Signs of Moscow, Idaho" Facebook group, where public members of the group can post pictures of stickers, flyers, and other signs currently allowed in the City.  These "permitted signs" include, *inter alia*, "F**k Christ Church," "Obey the Cult" (with an image of Plaintiff Nathan Wilson's father, the pastor of Christ Church), and the "All Kirkers Are Bastards," sticker.  True and correct pictures of some of these "permitted signs" appear below:

 

47.      Days after the City dispatched its first group of workers to remove the Soviet Moscow protest decals, Defendant Waters delivered citations to Plaintiffs' home, and told Plaintiff Nathan Wilson that both of his sons were being charged with 13 misdemeanors each and that he was being charged as an accessory.  Defendant Waters added that the crime they were being charged with was the crime most commonly committed by posting "lost cat fliers and yard sale signs."  More specifically, the officer told Plaintiff Nathan Wilson that they were all charged with a violation of a City ordinance, Title 10, Chapter 1, Section 22, which generally forbids the placing of a sign or flier or other advertising matter on a pole without permission.  Plaintiff Nathan Wilson asked if City police officers ever handcuffed and interrogated individuals they suspected of having

placed a lost cat flier on a pole.  Defendant Waters declined to answer.

48.     The bases for the charges, and the sole basis for the charges against Plaintiff Nathan

Wilson, were the statements Defendants Waters, Gunderson, and Nunes extracted from Plaintiffs

Rory Wilson and S.J.W. while in custody, in violation of the Fifth Amendment.   Moreover,

Defendant Waters assumed the guilt of Plaintiff Nathan Wilson based on his statement at the scene

of the seizure that he (Plaintiff Nathan Wilson) was not willing to answer the officer's questions

and was "pleading the Fifth."

49.     Title 10, Chapter 1, Section 22 (hereinafter "City Ordinance") states as follows:

**Sec. 1-22. No Posting on Fences or Buildings or Poles.**

A.     No person shall post, paint, tack, tape or otherwise attach or cause to be
attached, any notice, sign, announcement, or other *advertising matter* to any fence,
wall, building, tree, bridge, awning, post, apparatus or other property not belonging
to said person without first obtaining the consent of the owner or lessee of such
property or their agent(s) or representative(s).   No person shall post, paint, tack,
tape or otherwise attach or cause to be attached any notice, sign, announcement, or
other *advertising matter* to any telephone or electric pole within the City.

B.     No notice, sign, announcement, or other *advertising matter* shall be posted
on public property or public right-of-way without prior approval, in writing, from
the governmental entity owning or controlling such public property or public right-
of-way.   This provision shall not apply to property or areas which have been
otherwise specifically approved for posting of notices, signs, announcements, or
other *advertising or similar matter* by the City or property owner or their agent(s)
or representative(s).

(emphasis added).

50.     After citations were issued, and throughout the discovery process, the City Police

Department and prosecutors (Defendants) repeatedly represented to the courts, Plaintiffs and their

counsel, and to the public that no video of the interrogations of Plaintiffs Rory Wilson and S.J.W.

existed.   In response to a January 22, 2021 subpoena deadline, Defendants repeated this claim.

Later, in March of 2021, the City Police Department "discovered" squad car audio/video of

Defendant Waters' issuing the citations at Plaintiffs' home.  But Defendants once again formally assured the court, Plaintiffs and their counsel, and the public that no video of the original interrogations existed.

51.    One year later, after multiple settlement offers (the City was receiving public pressure due to its discriminatory and selective enforcement of its ordinances against Plaintiffs and the City's discriminatory and selective treatment of members of Christ Church in general), and while prosecutors were preparing for a suppression hearing, it was discovered that the City Police Department had the video (accurately named and filed) in its possession the entire time.  The evidence log also revealed that City police officers, including Defendant Waters, had viewed the video in the interim.

52.    More specifically, when Mr. Keith Scholl (Deputy Prosecuting Attorney for Latah County) and Defendant Warner were preparing Defendant Gunderson to testify at a suppression hearing held in October 2021, Defendant Gunderson stated that he was unable to answer a question about the night the boys were detained so he would have to check the video.  Mr. Scholl was shocked because the City Police Department was adamant that no such video existed.  Mr. Scholl immediately notified Plaintiffs' defense counsel, asserting that he (Mr. Scholl) "was unaware of this evidence.  [Defendant] Warner was present for the meeting and also advised she has not *seen* this footage" (careful phrasing).  The log (and testimony) later revealed that all three defendant officers had viewed the video and were fully aware of its existence.  Defendant Gunderson later asserted that he believed the existence of the video to have been common knowledge, and that it had been correctly filed and labeled in the City Police Department's system.  In other words, the non-existing video was in fact filed right along with the audio/video that had been "discovered" seven months prior.

53.     The video was eventually disclosed to Plaintiffs.  However, no audio was ever provided, thereby enabling the defendant police officers to deny (under oath) what both boys claim they said during the interrogations.  During sworn testimony, the officers admitted that no *Miranda* warnings were given, but they also incorrectly testified that a Fourth Amendment seizure/detention did not take place because, per the City's training of the officers, a Fourth Amendment seizure/detention doesn't occur until a suspect is taken to jail and the two boys were not taken to jail; they were eventually released at the scene.

54.     City police officers wear microphones, and it is City policy that interactions between officers and private citizens be recorded.  Yet, no recordings have been produced of the seizures and subsequent interrogations of Plaintiffs Rory Wilson and S.J.W.

55.     In discovery, the City admitted that Plaintiffs were the only people the City has ever charged with posting without permission in the entire history of the City Ordinance (§ 1-22). Plaintiffs retain that unfortunate and exclusive status despite the fact that signs, fliers, and stickers are openly and regularly placed on poles throughout the City, and such postings continues to date.

56.     The City's bias and prejudice against Plaintiffs, their political and religious views, and their religious beliefs were evidenced by Defendant Warner's written exchanges in which she describes Plaintiffs' religious community/family as "religious idiots" and "Christ Church *ssholes," and refers to Plaintiffs' protest actions and religious activity as "bullsh*t."  The City's bias and prejudice against Plaintiffs' political views is further evidenced by Defendant Waters' open hostility and opposition to the message conveyed by the Soviet Moscow protest decals.

57.     Bill Thompson, the Latah County Prosecutor, initially agreed to prosecute Plaintiff S.J.W. for posting the Soviet Moscow protest decals (the County, and not the City, is responsible for prosecuting juveniles).  But when Defendant Warner attempted to preemptively extort a civil

settlement from Plaintiffs under threat of further criminal prosecution (Defendant Warner realized that the City was exposed to civil liability), Mr. Thompson/his deputy prosecutor understood what was taking place (*i.e.*, that this was a vindictive and selective prosecution) and promptly offered to drop the charges against S.J.W. if he wrote a paper on the importance of civil disobedience.  Mr. Thompson/his deputy prosecutor made the offer and expressly affirmed with Plaintiffs and the assigned judge that by accepting the offer and agreeing to write the paper, Plaintiff S.J.W. was not waiving any future civil claims, including any such claims against the City.  As a result, Plaintiff S.J.W. wrote a paper exploring the hypocrisy and illegality he had witnessed in his *own* prosecution, and the County Prosecutor dropped all charges against him.

58.    In May of 2022 and following a trial in Magistrate Court in the City, Plaintiff Rory Wilson was found guilty of one count of placing a sign or flier on a pole without permission.  That case is now on appeal in District Court.  The evidence used against Plaintiff Rory Wilson were the statements extracted from him and his brother during the unlawful custodial interrogation.

59.    After Plaintiff Rory Wilson's trial and when Plaintiff Nathan Wilson's attorney requested a trial date from the City Prosecutor, the charges against Plaintiff Nathan Wilson were suddenly dropped by the City without explanation.

60.    For twenty months, the City pursued the prosecution of Plaintiffs Nathan Wilson, and for eighteen months, the City pursued the prosecution of Plaintiff S.J.W.

61.    Defendants' ongoing persecution of Plaintiff Nathan Wilson caused him direct financial injury.

62.    Plaintiff Nathan Wilson is an author and producer in two industries dependent on reputation.  In Hollywood, moral turpitude clauses in contracts exposed Plaintiff Nathan Wilson's intellectual property to seizure while his prosecution by the City continued.

63.     For twenty months and as a direct result of the City's selective prosecution, Plaintiff Nathan Wilson suffered reputational and economic damage.  And yet, Plaintiff Nathan Wilson's "crime" was creating decals critical of the City—decals which conveyed a political message in protest to the City's draconian COVID-19 orders.

64.     On the heels of four seasons of a hit show and during a time when every studio and streamer was ordering more content than ever, Plaintiff Nathan Wilson was unable to put a new show into production with any mainstream outlet for the duration of his prosecution as the prosecution would expose his intellectual property to seizure, causing Plaintiff Nathan Wilson to suffer great economic loss.

65.     In fact, when Plaintiff Nathan Wilson was defamed in an article published in the United Kingdom by *The Guardian*, he sought redress through the British legal system.  Lawyers for *The Guardian* argued that Plaintiff Nathan Wilson's reputation had already been so irreparably harmed by the fact of his current criminal prosecution in his own City that the defamation and libel by *The Guardian* could do no further damage.  In other words, the reputational harm caused by Defendants' actions was evident and well known publicly.

66.     As a result of Plaintiff Rory Wilson's prosecution, he was prevented from receiving a NROTC scholarship to Columbia University, causing Plaintiff Rory Wilson to suffer great economic loss.

67.     The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.

68.     In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court adopted prophylactic procedural measures (*Miranda* warnings) to guarantee that a suspect is advised of his

Fifth Amendment rights before custodial interrogations.  These protections are constitutional in nature.

69.     Today, there can be no doubt that the Fifth Amendment privilege against self-incrimination—a constitutional right protected by *Miranda*—is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves.  Without proper safeguards, the process of in-custody interrogation of persons suspected or accused of a crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.  In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.

70.     While the failure to give a *Miranda* warning is not, itself, a ground for a § 1983 claim, coercive police questioning, such as that performed without advising a person of his or her *Miranda* rights, as in this case, does violate the Fifth Amendment when the statements are "used" in a "criminal case."  The Ninth Circuit has held that a coerced statement has been "used" in a criminal case when, *inter alia*, it has been relied upon to file formal charges against the declarant or to determine judicially that the prosecution may proceed.

71.     Defendants coerced incriminating statements from Plaintiffs Rory Wilson and S.J.W. without advising them of their rights under *Miranda*, and these statements were used in a criminal case in violation of the Fifth Amendment.

72.     Defendant Waters, acting on personal prejudice in reaction to the free speech exercised by Plaintiffs, and with a retaliatory intent, did harass and intimidate Plaintiff S.J.W.,

failed to give him *Miranda* warnings prior to conducting a custodial interrogation while knowing that Plaintiff S.J.W. was not free to leave, suppressed exculpatory evidence, and testified falsely at a suppression hearing, all of which eventually led to the charging/prosecutions of Plaintiffs.

73.    More specifically, Defendant Waters falsely testified that he only asked Plaintiff S.J.W. for his name, age, and parents' phone number (video shows a much longer interrogation). He also falsely testified that he never swore at Plaintiff S.J.W. and never would swear at a minor. In fact, after learning that Plaintiff S.J.W. was a minor, Defendant Waters swore at him, threatened to hold him indefinitely, reiterated that he was not free to leave, told him that he had committed a felony and was now required by law to tell him everything if he didn't want to be locked up and held as long as the officer pleased.  Defendant Water also falsely testified that he never told Plaintiff Nathan Wilson that he disagreed with the messaging of the decals.  And he falsely testified that the boys never offered to remove the decals (after the boys had been falsely told that placing them on the poles was a felony).  It is convenient for Defendants that the audio of the encounter with Plaintiffs is strangely missing.

74.    After a disagreement with Plaintiff Nathan Wilson about the messaging of the decals used by Plaintiffs Rory Wilson and S.J.W., Defendant Waters falsely accused Plaintiff Nathan Wilson of criminality resulting in the prosecution of Plaintiff Nathan Wilson by the City and its officials, including Defendants Bautista and Warner.  And when Defendant Waters delivered the citations to Plaintiffs, Defendant Waters confirmed with Plaintiff Nathan Wilson that his (Plaintiff Nathan Wilson's) invoking of his Fifth Amendment right to remain silent was evidence of his guilt.

75.    Defendant Waters chose to treat Plaintiffs as criminals despite knowing that they were exercising their right to free speech in a way always allowed by the City and ignored by

officers and other City officials before and since, with the sole exception being this case, where Plaintiffs were engaged in political speech critical of the City.

76.     Defendant Gunderson, acting on personal prejudice in reaction to the free speech exercised by Plaintiffs and with a retaliatory intent, handcuffed Plaintiff Rory Wilson, forced him to the ground, and conducted a custodial interrogation without providing him his *Miranda* warnings and knowing that Plaintiff Rory Wilson was not free to leave.  Defendant Gunderson suppressed exculpatory evidence for almost a year and falsely testified in the pursuit of criminal charges against Plaintiffs for exercising their right to free speech.

77.     Defendant Gunderson chose to treat Plaintiffs as criminals despite knowing that they were exercising their right to free speech in a way always allowed by the City and ignored by officers before and since, with the sole exception being this case, where Plaintiffs were engaged in political speech critical of the City.

78.     Defendant Nunes, acting on personal prejudice in reaction to the free speech exercised by Plaintiffs and with a retaliatory intent, was involved in the seizure and custodial interrogation of Plaintiff Rory Wilson without providing him *Miranda* warnings and knowing that Plaintiff Rory Wilson was not free to leave.  Defendant Nunes suppressed exculpatory evidence for almost a year, and he provided false testimony in the pursuit of criminal charges against Plaintiffs for exercising their free speech.

79.     Defendant Nunes chose to treat Plaintiffs as criminals despite knowing that they were exercising their right to free speech in a way always allowed by the City and ignored by officers before and since, with the sole exception being this case, where Plaintiffs were engaged in political speech critical of the City.

80.     Defendants Nunes and Gunderson both falsely testified that Plaintiffs Rory Wilson and S.J.W. did not offer to remove the decals.  They also falsely testified that they only handcuffed Plaintiff Rory Wilson because when they began interrogating him, he showed signs that he was going to run, and they feared for their own safety.  However, video shows the falsity of this claim, as it shows that Plaintiff Rory Wilson was casual and entirely upright, waiting for the two officers to begin interrogating him.  In actuality, Defendant Gunderson was angry, and it was when Plaintiff Rory Wilson declined to show ID, saying, "I thought Idaho was not a stop and identify state?" or words to that effect, that Defendant Gunderson grabbed him, handcuffed him, and forced him to the ground.  Plaintiff Rory Wilson showed no signs of fleeing or abandoning his younger brother.  Defendant Gunderson told Plaintiff Rory Wilson that he would release him from the handcuffs if he talked.

81.     While Plaintiff Rory Wilson was handcuffed, Defendant Gunderson took the boy's bag (a zipped lunch cooler) and searched it without permission.

82.     Defendants Nunes and Gunderson testified falsely about their motivation for handcuffing Plaintiff Rory Wilson, and this falsity would have been proven had the audio been produced.  The officers also handcuffed Plaintiff Rory Wilson at approximately 19 seconds into their conversation, and this fits Plaintiff Rory Wilson's description of events, not the description offered by the officers.  In short, the handcuffing was punitive and an intimidation technique to compel Plaintiff Rory Wilson to speak during the interrogation, as was keeping him squatting against a wall when they finally removed the handcuffs.  A true and correct picture of Plaintiff Rory Wilson being forced by the officers to squat against the wall appears below:



83.     Defendants Bautista and Warner, acting on behalf of the City, pursued prosecution of Plaintiffs based on their animus toward Plaintiffs and Plaintiffs' political and religious viewpoints and religious beliefs.  Defendants' prosecution of Plaintiffs was selective, invidious, in bad faith, and based on impermissible considerations, including Plaintiffs' religious and political viewpoints, religious beliefs, and Plaintiffs' exercise of their constitutional rights.  To that end, Defendants selectively enforced the City Ordinance.

## FIRST CLAIM FOR RELIEF

### (Freedom of Speech & Retaliatory Prosecution—First Amendment)

84.     Plaintiffs hereby incorporate by reference all stated paragraphs.

85.     By reason of the aforementioned acts, ordinances, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

86.     Defendants' actions, as set forth in this First Amended Complaint, injured Plaintiffs in a way likely to chill a person of ordinary firmness from further participation in free speech activity.  Plaintiffs' political and religious viewpoints and religious beliefs motivated Defendants' adverse actions.  Thus, Defendants acted with a retaliatory intent or motive.

87.     Defendants targeted Plaintiffs for disfavored treatment and harassment because of Plaintiffs' political and religious viewpoints and religious beliefs, as set forth in this First Amended Complaint, in violation of the First Amendment.

88.     Defendants' animus against Plaintiffs' political and religious speech is content and viewpoint based in violation of the First Amendment.

89.     The City Ordinance as applied to punish Plaintiffs' speech, as set forth in this First Amended Complaint, violates the First Amendment.

90.     The City Ordinance, as applied to punish Plaintiffs' speech as set forth in this First Amended Complaint, is vague and overbroad in violation of the First Amendment.

91.     Defendants will seek to enforce the City Ordinance against Plaintiffs' expressive activity in the future, as set forth in this First Amended Complaint.

92.     The City Ordinance and the policy and/or practice with regard to the selective enforcement of the ordinance against Plaintiffs were each a moving force behind the violation of Plaintiffs' rights protected by the First Amendment as set forth in this First Amended Complaint.

93.     As a direct and proximate result of Defendants' violation of the First Amendment, as set forth in this First Amended Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

**SECOND CLAIM FOR RELIEF**

**(Equal Protection & Selective Prosecution—Fourteenth Amendment)**

94.     Plaintiffs hereby incorporate by reference all stated paragraphs.

95.     By reason of the aforementioned acts, ordinances, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived

Plaintiffs of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

96.     Selective prosecution claims are premised upon the denial of equal protection. Accordingly, Defendants' prosecution of Plaintiffs deprived Plaintiffs of the equal protection guarantee of the Fourteenth Amendment.

97.     Defendants' enforcement of the City Ordinance as set forth in this First Amended Complaint violates the Equal Protection Clause of the Fourteenth Amendment.

98.     By denying Plaintiffs access to a forum to engage in free speech based on the content and viewpoint of the speech, which Defendants disfavor, Defendants have deprived Plaintiffs of the equal protection of the law.

99.     As set forth in this First Amended Complaint, Defendants have targeted Plaintiffs for selective and disfavored treatment because of Plaintiffs' political and religious viewpoints and religious beliefs in violation of the equal protection guarantee of the Fourteenth Amendment.

100.    Defendants' prosecution of Plaintiffs was selective, invidious, in bad faith, and based on impermissible considerations, including Plaintiffs' religion and the exercise of their constitutional rights.

101.    As set forth in this First Amended Complaint, Defendants' adverse actions against Plaintiffs were designed to intimidate, oppress, and punish Plaintiffs and similarly situated individuals who share Plaintiffs' political and religious viewpoints, which Defendants disfavor, in violation of the equal protection guarantee of the Fourteenth Amendment.

102.    The enforcement of the City Ordinance against Plaintiffs, as set forth in this First Amended Complaint, violates Plaintiffs' rights protected by the Fourteenth Amendment, including

Plaintiffs' right to be free from selective enforcement of the law based on impermissible considerations.

103.    The City Ordinance and the City's policy and/or practice of targeting Plaintiffs because of Plaintiffs' political and religious viewpoints and religious beliefs were each a moving force behind the violation of Plaintiffs' rights protected by the Fourteenth Amendment, as set forth in this First Amended Complaint.

104.    As a direct and proximate result of Defendants' violation of the Equal Protection Clause and Defendants' selective enforcement of the City Ordinance, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

### THIRD CLAIM FOR RELIEF

### (Self-Incrimination—Fifth Amendment)

105.    Plaintiffs hereby incorporate by reference all stated paragraphs.

106.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, the City and Defendants Waters, Gunderson, and Nunes have deprived Plaintiffs of their right against self-incrimination protected by the Fifth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

107.    As set forth in this First Amended Complaint, Defendants Waters, Gunderson, and Nunes engaged in coercive custodial interrogation of Plaintiffs Rory Wilson and S.J.W. without advising Plaintiffs of their *Miranda* rights, and the coerced statements were used in a criminal case in violation of the Fifth Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment and 42. U.S.C. § 1983.

108.    The City's acts, policies, practices, customs, and/or procedures, and its failure to adequately train and supervise its police officers, including Defendants Waters, Gunderson, and Nunes, were each a moving force behind the constitutional violations and a proximate cause for the harm caused to Plaintiffs.

109.    As a direct and proximate result of Defendants' violation of the Fifth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

**FOURTH CLAIM FOR RELIEF**

**(Excessive Force—Fourth Amendment)**

110.    Plaintiffs hereby incorporate by reference all stated paragraphs.

111.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, the City and Defendants Gunderson and Nunes deprived Plaintiff Rory Wilson of his rights protected by the Fourth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

112.    The Fourth Amendment protects against unreasonable seizures, including the use of unnecessary and unreasonable force to accomplish the seizure.

113.    Accordingly, the Fourth Amendment prohibits officers from using excessive and, therefore, constitutionally unreasonable force in the course of a seizure (arrest).

114.    Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  This requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.

115.    As a result of the type and amount of force used against Plaintiff Rory Wilson when he was seized by City police officers assessed against the limited government interests at stake (*i.e.*, the "crime" was plainly not severe, Plaintiff posed no immediate threat to the safety of the officers or others, and Plaintiff was not actively resisting arrest or attempting to evade arrest by flight) and in light of the totality of the circumstances as set forth in this First Amended Complaint, the force employed by Defendants against Plaintiff Rory Wilson was not constitutionally reasonable, in violation of the Fourth Amendment.

116.    Defendants Gunderson and Nunes used force against Plaintiff Rory Wilson to harass him and in retaliation to Plaintiff Rory Wilson's speech critical of the City.

117.    As a direct and proximate result of Defendants' violation of the Fourth Amendment, Plaintiff Rory Wilson has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief and damages.

### FIFTH CLAIM FOR RELIEF

### (First and Fourteenth Amendments—Overbreadth and Vagueness)

118.    Plaintiffs hereby incorporate by reference all stated paragraphs.

119.    By reason of the aforementioned City Ordinance, acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, the City has deprived Plaintiffs of their rights protected by the First (freedom of speech) and Fourteenth (due process) Amendments and 42 U.S.C. § 1983.

120.    The City Ordinance lacks explicit standards thereby permitting arbitrary and discriminatory enforcement and thus impermissibly delegating basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of

arbitrary and discriminatory application, as evidenced by the facts set forth in this First Amended Complaint.

121.    Based on the City's policy and practice of enforcement and the plain language of the City Ordinance, Plaintiffs' Soviet Moscow protest decals are not "advertising matter," as "advertising" is commonly and reasonably understood to mean attracting public attention to a product or business through paid announcements.

122.    The City Ordinance abuts upon sensitive areas of basic First Amendment freedoms and thereby operates to inhibit the exercise of those freedoms.

123.    The vagueness and overbreadth of the City Ordinance lead citizens such as Plaintiffs to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

124.    The City Ordinance was the moving force behind the violation of Plaintiffs' rights protected by the First and Fourteenth Amendments as set forth in this First Amended Complaint.

125.    As a direct and proximate result of the City's violation of the First and Fourteenth Amendments, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A)      to declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this First Amended Complaint;

B)      to declare that the City Ordinance, facially and as applied to Plaintiffs' expressive activity as set forth in this First Amended Complaint, is overbroad and vague in violation of the First and Fourteenth Amendments;

C)      to permanently enjoin Defendants' policy and/or practice of selectively enforcing the City Ordinance and targeting Plaintiffs and other similarly situated persons based on their political and religious viewpoints and religious beliefs as set forth in this First Amended Complaint;

D)      to award Plaintiffs nominal and compensatory damages;

E)      to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

F)      to grant such other and further relief as this court should find just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury.

Respectfully submitted,

**MAGYAR, RAUCH & ASSOCIATES, PLLC**

/s/ *Greg Rauch*
Greg Rauch (ISB 7389)
326 E 6th Street
Moscow, Idaho 83843
(208) 882-1906
rauch@mralegal.com

**AMERICAN FREEDOM LAW CENTER**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)*
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org
* Admitted *pro hac vice*

*Counsel for Plaintiffs*

- 29 -