UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATHAN DAVID WILSON, et al., | Case No. 3:22-cv-00421-BLW |
| Plaintiffs, | **MEMORANDUM DECISION** |
| v. | **AND ORDER** |
| CITY OF MOSCOW, *et al.*, | |
| Defendants. | |

## INTRODUCTION

Before the Court is Defendants' motion to dismiss (Dkt. 23).[1] Having thoroughly considered the parties briefing and the relevant record, the Court finds oral argument unnecessary. For the reasons set forth below, the Court will grant in part and deny in part the motion to dismiss.

## BACKGROUND

In the early morning on October 6, 2020, the City of Moscow Police Department received a report that two individuals were placing stickers on signs and posts around the downtown Moscow area. Soon after, Moscow Police officers

---

[1] The defendants in this case are the City of Moscow, Mia Bautista, Liz Warner, Jay Waters, Shaine Gunderson, and Mitch Nunes (collectively the "City Defendants").

responded to the complaint and eventually confronted Rory Wilson and SJW, who are brothers.[2] Once the officers made contact with the brothers, they detained and questioned them about the stickers.[3] At some point during the interaction, one of the officers called the brothers' parents, and their father, Nathan Wilson, soon after arrived on the scene. Eventually, Rory and SJW were released to Nathan without any citations being issued.

However, at some point after the October 6, 2020 interaction, Rory and Nathan were charged with violating Moscow's No Posting on Fences or Poles ordinance, Moscow City Code § 10-1-22. While the Wilsons claim that SJW was also charged with violating the statute, the City Defendants state that SJW was the subject of a juvenile proceeding. The Wilsons—who are members of the Christ Church—allege that these citations, and the events that occurred in October 2020, were the result of bias and prejudice against the Wilsons for their political and religious views. *Am. Compl.* ¶ 56, Dkt. 8.

In May 2022, following a trial in Magistrate Court, a jury found Rory guilty

------

[2] The parties' accounts of the events that occurred on and after October 6, 2020 drastically differ. Therefore, Court will limit its factual background to the undisputed facts.

[3] The stickers at issue had a picture of a hammer and sickle and stated, "Soviet Moscow – Enforced because we care," which the Wilsons allege was political speech against Moscow's mask mandates that were put in place during the COVID-19 pandemic.

of one count of placing a sign or flier on a pole without permission in violation of Moscow City Code § 10-1-22. *Id.*, ¶ 58. Following Rory's trial, the city dropped the charges against Nathan, and the county prosecutor dismissed the proceedings against SJW after he agreed to write an essay on civics. *Id.*, ¶¶ 57, 58.

In March 2022, Rory appealed his conviction to the Latah County District Court, which was the first step in his appeals process. On October 6, 2022, with Rory's appeal pending, the Wilsons filed this suit in federal court. *See* Dkt. 1. The Wilsons allege five causes of action under the Constitution and 42 U.S.C. § 1983: (1) freedom of speech and retaliatory prosecution under the First Amendment, (2) equal protection and selective prosecution under the Fourteenth Amendment, (3) self-incrimination under the Fifth Amendment, (4) excessive force under the Fourth Amendment, and (5) overbreadth and vagueness under the First and Fourteenth Amendments. *See Am. Compl.*, Dkt. 8.[4] All the Wilsons' federal claims arise from the October 6, 2020 incident and the following prosecution, and seek injunctive and declaratory relief as well as damages. *See generally id.*

---

[4] The Wilsons' complaint does not specify which plaintiff is alleging which cause of action or what specific relief each claim seeks. *Id.* Rather, each claim is collectively alleged by the "Plaintiffs" and seeks "declaratory and injunctive relief and damages" under each of their claims. *Id.* It is unclear how certain injunctive relief could be granted under some of the Wilsons' claims, such as their Fifth Amendment claim. However, that issue is not before the Court.

On January 30, 2023, the City Defendants filed their motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. *See Def.s' Motion*, Dkt. 23. They argue that because Rory is still appealing his conviction, this Court should abstain from hearing any of the Wilsons' claims under *Younger v. Harris*, 401 U.S. 37, 43 (1971). *See Def.s' Br.* at 5-7, Dkt. 23-1. Alternatively, the City Defendants argue that if the Court elects not to abstain, the Wilsons' malicious and retaliatory prosecution claims are barred, their vagueness and First Amendment challenges to Moscow City Code § 10-1-22 fail as a matter of law, and, to the extent any claims are brought against Ms. Warner and Ms. Bautista in their individual capacity, they are barred by absolute immunity. *Id*. at 7-17. Unsurprisingly, the Wilsons dispute each of the City Defendants' claims. *See Plf.s' Response*, Dkt. 24.

On April 6, 2023, with the motion to dismiss pending, the City Defendants provided the Court with the Latah County District Court's appellate opinion regarding Rory's state court conviction. *See Dkt.* 26.[5] The Honorable John C.

---

[5] While Rule 12(b)(6) generally prohibits consideration of materials outside the pleadings, a court may consider matters of judicial notice without converting a motion to dismiss into a motion for summary judgment under Rule 12(d). *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may take judicial notice of "a fact that is not subject to reasonable dispute" because the fact is "generally known within the trial court's territorial jurisdiction; or . . . (Continued)

Judge of Idaho's Second Judicial District affirmed the magistrate's decision, rejecting the entirety of Rory's challenges and denied him any relief. *See id.*

On May 4, 2023, this Court ordered the parties to provide supplemental briefing regarding the status of Rory's state court proceeding. *See May 24 MDO*, Dkt. 27. The Court further requested that the parties address how Rory's state court action affected the "dismissal of specific claims made by specific Plaintiffs." *Id.*[6]

On May 9, 2023, Rory filed a notice of appeal seeking review of the Latah County District Court's April 4 appellate decision in the Idaho Supreme Court under Idaho Appellate Rule 11(c)(10). *See Def.s' Suppl. Br.*, Ex. A, Dkt. 29-1. With the procedural backdrop set, the Court will address the motion to dismiss.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to

---

. can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "undisputed matters of public record[,]" such as "[j]udicial opinions and other court records." *WildEarth Guardians v. U.S. Forest Serv.*, No. 1:19-cv-00203-CWD, 2020 WL 7647630, at *6 (D. Idaho Dec. 23, 2020) (quoting *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004)). "Specifically, the Court may judicially notice the existence of another court's decision—which includes the stated reasoning of the authoring court as well as the date of the decision—and other filings made in the case, but not the facts recited in that decision or other filings." *Id.*

[6] Despite the Court requesting that the parties address each plaintiff and each claim specifically, both parties' supplemental briefing failed to do so.

"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a

complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## ANALYSIS

### A.   *Younger* Abstention

The crux of the Moscow City Defendants' motion to dismiss is the abstention doctrine announced by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43 (1971). *Younger* and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 431 (1982). The Supreme Court has "identified two sources for this policy: the constraints of equity jurisdiction and the concern for comity in our federal system." *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004). "*Younger* abstention permits federal courts to preserve respect for state functions such that the national government protects federal rights and interests in a way that will not unduly interfere with the legitimate activities of the States." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (citations and internal quotations omitted).

*Younger* abstention is limited to three categories of cases: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings that are akin to criminal prosecutions; and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts. *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 588 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 748 (2023) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)); *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). If a state proceeding falls into one of the three categories, then "*Younger* abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Page v. King*, 932 F.3d 898, 901–02 (9th Cir. 2019) (quoting *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018)). However, "even if *Younger* abstention is appropriate, federal courts should not invoke it if there is a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Id.* at 902 (citations and internal quotations omitted).

        In their motion, the City Defendants argue that because Rory has elected to

appeal his conviction, this Court should dismiss all the Wilsons' claims because "[t]here is no way this court could realistically consider [the Wilsons'] claims without also ruling on the validity of Rory's state court conviction[.]" *See Def.s' Br.* at 7, Dkt. 23-1.

Conversely, the Wilsons present four arguments as to why the Court should reject applying *Younger* to this matter. *See Plf.s' Response* at 9-12, Dkt. 24. First, the Wilsons argue that *Younger* abstention does not apply to Nathan's and SJW's claims because they are not parties to any ongoing state court proceedings. *See id.* at 9. Second, the Wilsons contend that none of their claims seek to enjoin the ongoing state court proceedings; rather, they only seek to prohibit future enforcement of the ordinance. *See id.* at 10. Third, the Wilsons claim that if *Younger* is applied, the proper procedure is to stay the claims for damages, not dismiss them. *See id.* at 11. Finally, the Wilsons state that even if the abstention requirements are satisfied, certain exceptions to *Younger* are present. *See id.*

As discussed below, the first question is whether *Younger* applies to Rory and his federal claims. It does. The second question is whether Nathan's and SJW's claims are so inextricably intertwined with Rory's that *Younger* should also apply to them. Again, the Court answers that question in the affirmative.

### 1. Rory's claims

MEMORANDUM DECISION AND ORDER - 9

The first three *Younger* factors are not at issue in this case. The Wilsons do not contend that Rory's state proceeding is not ongoing, that a criminal prosecution does not satisfy the important state interest, or that Rory did not have an opportunity to raise his constitutional claims.[7] *See Plf.s' Response* at 9-12.

Rather, as mentioned, the Wilsons raise four limited arguments for rejecting the application of *Younger* in this case, of which only the last three are relevant to Rory's claims. That is, the Wilsons argue (1) Rory's claims do not have an

---

[7] Although the Wilsons do not challenge the first three *Younger* factors, they are easily met in this case. First, the parties recently confirmed that Rory is continuing to challenge his criminal conviction and is seeking review in the Idaho Supreme Court. *See Plf.s' Suppl. Br.* at 1, Dkt. 28 (explaining that Rory is seeking review of his conviction by the Idaho Supreme Court); *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) ("For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign."); *Gilbertson*, 381 F.3d at 969 n.4 (9th Cir. 2004) (finding Younger appropriate where the federal suit was filed during the state appeals process). Second, because Rory's state court proceeding involves criminal enforcement, the "important state interest" requirement is "easily satisfied[.]" *Potrero Hills*, 657 F.3d at 883 ("Where the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake.") (citations omitted); *see also Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("This Court has recognized that the State's interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief"). Third, Rory is free to, and has, raised his constitutional claims in the underlying state court proceeding. *See Appellate Op.* at 1, Dkt. 26-1; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Herrera*, 918 F.3d at 1046 ("[T]he burden [of showing that was no opportunity to present federal constitutional claims] rests on the federal plaintiff to show that state procedural law barred presentation of [its] claims.") (citations and internal quotations omitted). Thus, only the fourth element remains an issue before the Court.

enjoining effect on his criminal case, challenging the fourth *Younger* element, (2) that circumstances in this case warrant an exception to *Younger*, and (3) if *Younger* applies, Rory's claims for damages should be stayed, not dismissed. *See id*. The Court will address each argument in turn.

### a. Enjoining effect.

The Wilsons primarily oppose applying *Younger* by arguing that none of the Wilsons' claims seek to "enjoin, or [will] have the practical effect of enjoining, ongoing state court proceedings." *Plf.s' Response* at 10, Dkt. 24 (quoting *AmerisourceBergen Corp.*, 495 F.3d at 1149). The Court is not persuaded.

In support of their contention, the Wilsons rely on *Wooley v. Maynard*, 430 U.S. 705 (1977). In *Wooley*, the appellees—a husband and wife—sought injunctive and declaratory relief against the enforcement of a New Hampshire statute that made it a misdemeanor to knowingly obscure the state motto—"live free or die"—on a license plate. *See* 430 U.S. at 708. The appellees, who were followers of the Jehovah's Witnesses faith, considered the state motto repugnant to their moral, religious, and political beliefs. *Id*. Before filing their federal lawsuit, the husband had been convicted of violating the statute and had already completed a jail sentence. *Id.* On appeal, the appellants argued that the trial court erred by failing to dismiss the suit under *Younger* due to those prior violations. *Id.* at 711. The Court

rejected the appellant's argument holding that "the suit [was] in no way 'designed to annul the results of a state trial' since the relief sought [was] wholly prospective, to preclude further prosecution under a statute alleged to violate appellees' constitutional rights." *Id.* The Court explained:

> [the husband] ha[d] already sustained convictions and ha[d] served a sentence of imprisonment for his prior offenses. He [did] not seek to have his record expunged, or to annul any collateral effects those convictions may have, e.g., upon his driving privileges. The [appellees sought] only to be free from prosecutions for future violations of the same statutes.

*Id.* The Court concluded that "*Younger* does not bar federal jurisdiction." *Id.*

  *Wooley* is inapposite to the case at hand. Unlike the plaintiff in *Wooley*, the state enforcement action against Rory remains ongoing as it is awaiting review from the Idaho Supreme Court. More importantly, the Wilsons' claim that, similar to *Wooley*, they "have [only] asserted claims for declaratory and injunctive relief that seek to prevent the *future* discriminatory and selective enforcement[,]" ignores the majority of the relief sought and the practical effect it would have. *See Plf.s' Response* at 10, Dkt. 24 (emphasis original).

  To support their claim, the Wilsons point to Paragraph C in their prayer for relief, explaining that they are only "seeking to prohibit further discriminatory and selective enforcement of the law that prohibits speech activity." *Id*. However, the Wilsons' requested relief provides no such limitation as to exclude the City's

MEMORANDUM DECISION AND ORDER - 12

ongoing enforcement action. Instead, the Wilsons seek "to permanently enjoin Defendants' policy and/or practice of selectively enforcing the City Ordinance and targeting Plaintiffs and other similarly situated persons based on their political and religious viewpoints and religious beliefs . . . ." *See Am. Compl.* at 28, Dkt. 8.

Despite the Wilsons' protests, the fact that the complaint does not explicitly seek to enjoin the state court proceeding does not save Rory's claims from falling within the scope of *Younger* as such injunctive relief would have the same practical effect. *See AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 n.9 (9th Cir. 2007) (clarifying that the fourth element does not require "direct" interference, but only "a more general requirement that *some* interference with state court proceedings is a necessary—and, indeed, motivating—element of the Younger doctrine[.]") (emphasis original). There is little doubt that Rory's claims "would unavoidably be decided against the backdrop of pending state proceedings." *Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir. 1988). Hypothetically, if this Court were to grant Rory the relief he seeks and enjoin the City Defendants from enforcing the ordinance against him, it is unclear how the criminal prosecution could proceed. Notably, Rory—or any of the Wilsons—have not even attempted to explain how such relief would not inevitably result in the exact interference *Younger* seeks to avoid. Thus, regardless of the Wilsons' decision to omit express

relief regarding the state court action, the relief sought would nonetheless implicate *Younger's* policy concerns because it would have the same practical effect on the appeal proceedings in the state court action.

Except for his excessive force claim, Rory's requests for declaratory relief fare no better.[8] *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid."). The Supreme Court has explained that where a criminal

---

[8] In a footnote, the Wilsons claim that "[t]here is no basis from abstaining from resolving [the excessive force] claim as it will have no impact on the state court proceedings." *Plf.s' Response* at 11 n. 4, Dkt 24. Conversely, the City Defendants provide no independent analysis as to the Wilsons' claims. While both parties' discussion is notably sparse, based on the limited record, it is not readily apparent to the Court how a ruling on Rory's excessive force claim would interfere with the state court proceeding. Although the complaint is not the epitome of clarity, it does not appear that Rory, or any of the Wilsons, are challenging the legality of the arrest through their excessive force claim. Under their fourth cause of action, there are no allegations of lack of probable cause or unlawful arrest. Rather, it appears that Rory is challenging the reasonableness of the force used during the arrest. As long as the Court's understanding is congruent with the Wilsons' intended pursuit of their claim, the Court finds that, even if Rory was to prevail on his excessive force claim, there would be no interference with the state criminal proceedings. *See, e.g.*, *Hatton v. Triplet*, No. 221CV1206TLNDBP, 2022 WL 12064524, at *2 (E.D. Cal. Oct. 20, 2022) (finding that the federal plaintiff's excessive force claim would not enjoin or have the practical effect of enjoying the ongoing state proceedings); *Foy v. Vallejo Police Dep't*, No. CIV S-11-3262-MCE, 2013 WL 2303101, at *2 (E.D. Cal. May 23, 2013) (finding that plaintiffs excessive force claim would not impact his underlying criminal proceeding for robbery where the plaintiff did not claim lack of probable cause or unlawful arrest); *but see Mota v. White*, No. 3:20-CV-1863-LAB-RBM, 2020 WL 7043605, at *4 (S.D. Cal. Dec. 1, 2020) ("*Younger* abstention is warranted when a plaintiff asserts Section 1983 claims of excessive force related to their arrest in federal court while simultaneously facing pending criminal charges of resisting arrest or a similar offense in state court.").

prosecution is ongoing, "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." *Id.*

Here, Rory seeks a declaratory ruling that the City Defendants' conduct on October 6, 2022 and the following prosecution of the ordinance—also the basis for the underlying criminal proceeding—violated the his constitutional speech, equal protection, and self-incrimination rights. *See Am. Compl.* at 28, Dkt. 8. Rory further requests a ruling that Moscow City Code § 10-1-22 is unconstitutional, facially and as applied to the Wilsons. *Id.*

Not only are these arguments available challenges to Rory's conviction in state court, but on appeal, Rory seems to be relying in large part on the very same constitutional theories he raises here.[9] Therefore, the Court again sees no way that

---

[9] *See, e.g., Appellate Op.* at 1, Dkt. 26-1 ("[Rory] claims the ordinance does not apply to his conduct and that he was prosecuted for violating MCC § 10-1-22(A) only because the messaging on his stickers opposed the City of Moscow COVID-19 mask Mandate."); *Id.* at 4 ("[Rory] also argues that the magistrate erred in denying his motion to suppress statements he made to officers because he was interrogated by officers without first receiving Miranda warnings"); *Id.* at 13 ("On appeal, [Rory] Wilson argues that MCC 10-1-22 is void for vagueness as applied . . . , 2) there were many other violations of the ordinance visible . . . , and 3) there was evidence of selective prosecution[.]").

it could grant the sought-after declaratory relief without improperly interfering with the ongoing state court proceedings. *See, e.g., Gilbertson*, 381 F.3d at 982 (holding that *Younger* applied to the plaintiff's Section 1983 claim because the constitutional issues raised in the federal complaint—including First Amendment retaliation, due process, and equal protection—"go to the heart of his opposition to the [defendant's] action in the state proceeding, such that a federal court's decision on the merits of [the plaintiff's] claims would have the same practical effect on the state proceeding as an injunction."); *Herrera*, 918 F.3d at 1048 (noting that abstention was appropriate on plaintiffs' alleged First, Fourth, and Fourteenth Amendments violations because if the court determined "whether violations of [the federal plaintiffs] civil rights ha[d] occurred . . . it would create a federal court judgment with preclusive effect over the ongoing state action.").

Simply put, the Court "cannot ignore the fact that any injunction or declaratory judgment issued by a federal court would [improperly] affect the course and outcome of the pending state proceedings." *Ballard*, 856 F.2d at 1570. Accordingly, absent a showing of "extraordinary circumstance," the Court must dismiss Rory's First, Second, Third, and Fifth claims for injunctive and declaratory relief under *Younger*. *See Sprint*, 571 U.S. at 72 ("When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state

prosecution.").[10]

### b. *Extraordinary circumstances exceptions.*

As mentioned, even where the *Younger* requirements are met, federal courts should not invoke the doctrine if a plaintiff can establish "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (quoting *Middlesex,* 457 U.S. at 435). However, the bad faith and harassment exceptions to *Younger* are "narrow." *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975). "Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction" do the expectations to *Younger* apply. *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *see also Juidice v. Vail*, 430 U.S. 327, 338 (1977) (these exceptions "may not be utilized unless" a plaintiff can allege and prove that the state prosecution is "in bad faith or [is] motivated by a desire to harass.").

Here, in a single unsupported sentence, the Wilsons claim that "[a]bstention is not warranted" because "[t]hese circumstances exist in this case[.]" *See Plf.s'*

---

[10] Neither the complaint nor the Wilsons' briefing clarifies what type of relief is being pursued under what claim. Instead, under each of their claims, all three of the Wilsons seek "declaratory and injunctive relief and damages." *See Am. Compl.* ¶¶ 93, 104, 109, and 125. Thus, the Court will not attempt to specify Rory's claims further.

*Response* at 11, Dkt 24; *see also Plf.s' Suppl. Br.* at 6, Dkt. 28 (the Wilsons again claim in a single sentence that "abstention is not warranted here because the prosecution of Plaintiffs was brought in bad faith and for an improper purpose."). However, "[j]udges are not like pigs, hunting for truffles buried in briefs" or the record. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (noting that a "skeletal 'argument', really nothing more than an assertion, does not preserve a claim."). Simply put, it was the Wilsons' burden to adequately allege that extraordinary circumstances warranting an exception exist, and their skeletal argument is insufficient to do so. *See Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) ("However, a plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies.").

### c.  *Claims for damages.*

Next, the Wilsons argue that "even if the Court is inclined to apply *Younger* abstention to Rory's claims . . . , the proper course is <u>not</u> to dismiss but, at a minimum[,] stay the claims for damages until the state court proceedings are completed." *Plf.s' Response* at 11, Dkt. 24 (emphasis original). The Court agrees.

As a threshold matter, Rory's claims for damages under his First, Second, Third, and Fifth claims fall within the scope of *Younger*. *See Gilbertson*, 381 F.3d

at 968 (“*Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff’s constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings.”). The Court has already determined that Rory’s declaratory relief under these claims would impermissibly interfere with the ongoing state proceedings. Because Rory’s claims for damages would necessarily require those same determinations, they also are subject to *Younger*.

However, unlike injunctive and declaratory relief, “federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed.” *Id*. Accordingly, the Court will adhere to the Ninth Circuit’s guidance and stay Rory’s claims for damages.

### 2. Nathan and SJW’s claims

The Wilsons argue that because there are no ongoing state court proceedings in which Nathan or SJW are parties, “*Younger* abstention does not apply to their claims.” *Plf.s’ Response* at 9, Dkt. 24. Without further explanation, the Wilsons also claim that abstention is improper because Nathan and SJW “have no ongoing state court proceeding to advance any of their constitutional claims.” *Plf.s’ Suppl. Br.* at 5, Dkt. 27.

Conversely, the City Defendants claim that *Younger* should apply to all the

federal plaintiffs because the lack of a state court proceeding against Nathan and SJW is neither significant nor relevant. The City Defendants contend that the arguments the Wilsons have presented "are not materially different than the arguments currently being litigated in Rory's appeal." *Def.s' Suppl. Br.* at 4, Dkt. 29. While the Court finds that the City Defendants' statement that lack of a state court proceeding is insignificant sweeps too broadly, as discussed below, it agrees that "it is difficult to imagine how this Court could take up Nathan and SJW's challenges to this ordinance without prejudicing, or at the very least[,] interfering with an ongoing state court proceeding." *Id.*

"Generally, *Younger* abstention only applies where the federal plaintiffs are also defendants in the ongoing state proceeding." *Herrera*, 918 F.3d at 1046 (citing *Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994)). "However, both the Supreme Court and [the Ninth Circuit] have recognized that 'there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them.'" *Id.* (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975)).

Although there is no bright line rule for determining when abstention can be extended to a nonparty federal plaintiff, the Ninth Circuit has "suggested that parties with 'a sufficiently close relationship or sufficiently intertwined interests'

may be 'treated similarly for purposes of *Younger* abstention.'" *Id.* (quoting

*Canatella v. California*, 404 F.3d 1106, 1116 (9th Cir. 2005).[11]  However, "when

the federal plaintiff is not a party to the state court action, a mere commonality of

interest with a party to the state litigation is not sufficient to justify abstention."

*Green v. City of Tucson*, 255 F.3d 1086, 1100 (9th Cir. 2001) (en banc), *overruled,

in part, on other grounds by Gilbertson,* 381 F.3d at 976–78.

      The guidelines for derivative abstention are set by the Supreme Court's

decisions in *Hicks v. Miranda,* 422 U.S. 332 (1975) and *Doran v. Salem Inn, Inc.,*

422 U.S. 922 (1975). *See, e.g.*, *Green*, 255 F.3d at 1099-1100; *Plf.s' Response* at 4;

Dkt. 24. The Ninth Circuit has summarized those two cases, stating:

> In *Hicks,* after two of their employees were charged under the state
> obscenity statute for showing a film and four copies of the film were
> seized, owners of an adult movie theater sued in federal court for the
> return of their film copies and an injunction against the enforcement of
> the statute. The Court explained that, under the particular circumstances
> of that case, *Younger* barred the federal suit: The owners' "interests and
> those of their employees were intertwined," given the fact that the
> seized films belonged to the owners but were central to the pending
> prosecutions. Consequently, "the federal action sought to interfere with
> the pending state prosecution," and the district court was constrained to
> abstain for that reason.

*Canatella*, 404 F.3d at 1114 (quoting *Green*, 255 F.3d at 1099-1100). By

---

[11] Like some other courts, this Court will refer to this concept as "derivative abstention."

comparison, the court explained that:

> In *Doran,* three bar owners sought an injunction in federal court against the operation of a local ordinance prohibiting topless entertainment in bars. Two had complied with the ordinance, but the third owner had not and was prosecuted in state court. Despite the similarity of the plaintiffs' interests, the Court held that *Younger* did not bar the two plaintiffs who did not face prosecution from pursuing their cause of action in federal court[.]

*Id.* (quoting *Green*, 255 F.3d at 1100). Importantly, even though the bar owners in *Doran* were "represented by common counsel, and [had] similar business activities and problems, they [were] apparently unrelated in terms of ownership, control, and management." *Id.* (quoting *Doran,* 422 U.S. at 928–29).

In *Herrera v. City of Palmdale*, the Ninth Circuit provided a much more recent analysis regarding whether *Younger* should be extended to federal plaintiffs who were not parties to a state court action. 918 F.3d at 1047. There, a husband and wife, who operated a motel, their children, and the company that owned the motel, which the husband and wife had formed, filed suit alleging multiple constitutional violations against the city, county, and their officials following the closure of the motel and the eviction of the family. *Id.* at 1041. Almost simultaneously, the city filed a nuisance complaint in state court against the husband and the company but did not name the wife or children as parties. *Id.*

In addressing the derivative abstention issue, the Ninth Circuit found that,

even though the wife and children were not named parties, their interests were sufficiently intertwined with the husband and the company to "warrant subjecting them all to the same *Younger* abstention considerations." *Id.* at 1047. In explaining the close relationship between the family and the company, the court noted that the wife was a co-owner of the company, and the children, with their parents, lived at the motel. *Id.* The court further explained that all the federal claims arose from a single proceeding to abate code violations at the motel and the corresponding investigation, during which the "family members were allegedly deprived of their civil rights collectively." *Id.* The court also highlighted that "all the federal plaintiffs [sought] the same relief[.]" *Id.* The Ninth Circuit concluded by noting that "[a]s in *Hicks*, the comity considerations raised by the federal claims of those not party to the state action are indistinguishable from those raised by the state defendants." *Id.*

Here, Nathan, SJW, and Rory's relationship and congruence of interest is more like that of the theater owners and their employees in *Hicks* or the family in *Herrera* than the bar owners in *Doran*. That is, the Wilsons' connection to each other is more than just being "represented by common counsel, and [having] similar . . . problems[.]" *Doran,* 422 U.S. at 928–29. Rather, there is both a "sufficiently close relationship" and "sufficiently intertwined interests" to warrant

treating all the federal plaintiffs in this case "similarly for purposes of *Younger* abstention." *Herrera*, 918 F.3d at 1046.[12]

It goes without saying that all the federal plaintiffs—the Wilsons—are part of the same nuclear family. All their federal claims arise from a single incident—the events that occurred on October 6, 2020 and the following criminal prosecutions— and in large part, the Wilsons were "allegedly deprived of their civil rights collectively." *Herrera*, 918 F.3d at 1047. Regardless of the differences in their prosecutions, the Wilsons were all cited for violations of the same ordinance, which they all seek to have determined unconstitutional, predominately based on their collective adherence to certain political and religious beliefs.[13] *See Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 83 (2d Cir. 2003) (extending *Younger* to the non-named federal plaintiffs because "[i]n this case, however, [the federal plaintiffs] do not assert independent First Amendment rights, nor do they bring truly separate challenges to the judicial conduct rules."). Further, the Wilsons do not, at any point in their complaint, distinguish their claims

---

[12] Like Rory's claims, as discussed below, the application of *Younger* to Nathan and SJW is limited to their First, Second, Third, and Fifth claims for relief.

[13] The Wilsons attempt to distinguish the charges against Nathan from Rory's because he was only charged as an "accessory" for producing the stickers, not with any actual posting. *See Plf.s' Response* at 9 n.3, Dkt. 24.

or the relief sought based on the individual, but instead, collectively refer to the Wilsons as "Plaintiffs" and seek uniform relief. *See Am. Compl.* at 28, Dkt. 8.

Moreover, if the Court allows Nathan or SJW to proceed with their claims, it will implicate the same comity considerations raised by Rory's claims. The injunctive relief the Wilsons' seek is to not only enjoin the City Defendants from "selectively enforcing the City Ordinance and targeting [the] *Plaintiffs*" but also "similarly *situated persons based on their political and religious viewpoints and religious beliefs*." *Id.* (emphasis added). Thus, even if Rory is removed as a plaintiff in this case, Nathan and SJW's injunctive relief would still apply to him. As previously discussed, that relief would have the practical effect of enjoining the state court action.

Nathan and SJW's requests for damages and declaratory relief suffer the same problem. Under their speech, equal protection, and self-incrimination claims, as previously discussed, this Court would necessarily be required to rule on the constitutionality of matters directly at issue in Rory's criminal proceedings. Similarly, a declaratory ruling that the ordinance, whether facially or as applied to Nathan and SJW, is also directly at issue in Rory's case and would also impermissibly interfere with the ongoing state court proceeding. Simply put, Nathan and SJW's First, Second, Third, and Fifth claims for relief challenge the

enforcement of the same ordinance, stemming from the same event, and under the same theories that Rory is challenging his conviction on appeal.

While the Court recognizes that applying *Younger* to federal plaintiffs who are not also parties to the pending state court litigation is the exception and not the rule, this case presents the "quite limited circumstances" where the Wilsons' claims are "so intertwined" as to warrant the abstention as to all the three federal plaintiffs. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013).

Accordingly, as it did with Rory's claims, the Court will dismiss Nathan and SJW's claims for injunctive and declaratory relief and stay any claims for damages under their First, Second, Third, and Fifth claims for relief. *See Herrera*, 918 F.3d at 1042 ("when a court abstains under *Younger*, claims for injunctive and declaratory relief are typically dismissed"); *Gilbertson*, 381 F.3d at 968 ("federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed."). However, also like Rory, the Court finds the concerns underlying *Younger* are not present with Nathan and SJW's excessive force causes of action and will deny the City

**MEMORANDUM DECISION AND ORDER - 26**

Defendants' request to dismiss their Fourth claim for relief.[14]

**ORDER**

**IT IS ORDERED that:**

2.      Defendants' Motion to Dismiss (Dkt.  23) is **GRANTED** as it relates to Plaintiffs' injunctive and declaratory relief under their First, Second, Third, and Fifth claim for relief.

2.      Defendants' Motion to Dismiss (Dkt. 23) is **DENIED** as it relates to Plaintiffs' Fourth claim for relief.

3.      Plaintiffs' claims for damages under their First, Second, Third, and Fifth claims for relief are **STAYED** until Rory's state court proceeding, Idaho State Case No. CR29-20-2114, is completed.

DATED: August 4, 2023

_____
B. Lynn Winmill
U.S. District Court Judge

---

[14] Because the City Defendants' alternate arguments involve claims that have either been dismissed or stayed—malicious prosecution, speech, and vagueness—the Court need not address them. *See Def.s' Br.* at 7-17, Dkt. 23-1. In fact, doing so would implicate the same *Younger* concerns that support the Court's abstention.

**MEMORANDUM DECISION AND ORDER - 27**