UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATHAN DAVID WILSON, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>CITY OF MOSCOW, et al.,<br><br>    Defendants. | Case No. 3:22-cv-00421-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiffs Nathan, Rory, and S.J. Wilson's motion for reconsideration (Dkt. 31). The Court held oral argument on April 18, 2024. For the reasons set forth below, the Court will deny the motion for reconsideration.

## BACKGROUND[1]

This case arises out of an early morning interaction between two brothers, Rory and S.J. Wilson, and their father, Nathan Wilson, and Moscow Police officers. This interaction was instigated after the police officers responded to a

---

[1] The Court has included only a limited background relevant to this motion. A more thorough recitation of the background of this matter is provided in the Court's August 4, 2023 Memorandum Decision and Order, which is hereby incorporated into this decision. *See Aug. 4 MDO*, Dkt. 30.

report that two individuals were placing stickers on signs and posts around downtown Moscow.

Following the filing of this lawsuit, the Defendants[2] filed a motion to dismiss arguing, among other things, that this Court should abstain from adjudicating any of the Wilsons' claims under the principles announced in *Younger v. Harris*, 401 U.S. 37 (1971). *See MTD,* Dkt. 23. Eventually, the Court partially granted the City Defendants' motion, finding that *Younger* abstention applied to Rory's ongoing state court criminal prosecution. *See Aug. 8 MDO*, Dkt. 30. The Court also found that Nathan and S.J. Wilson's interests were sufficiently intertwined to warrant extending the application of *Younger* to their claims, even though they are not parties to the underlying criminal proceeding. *Id.* at 19-27. Following *Younger's* guidelines, the Court dismissed the Wilsons' claims for injunctive and declaratory relief and stayed their claims for damages. *See Id.* at 27.[3]

On August 15, 2023, the Wilsons filed a motion for reconsideration. In their motion, the Wilsons raise two issues with this Court's previous ruling. First, the

---

[2] The defendants in this case are the City of Moscow, Mia Bautista, Liz Warner, Jay Waters, Shaine Gunderson, and Mitch Nunes (collectively the "City Defendants").

[3] The Court did not apply *Younger* to Rory's excessive force claim. *See id.* at 14, n.8. Nevertheless, the parties stipulated to stay the excessive force claim until Rory's appeals process was complete. *See* Dkt. 37.

**MEMORANDUM DECISION AND ORDER - 2**

Wilsons contend that the Court erred by ruling that the bad faith exception to *Younger* does not apply to this case. *See Pls' Br.* at 2, Dkt. 31-1 Second, the Wilsons argue that, even if the bad faith exception is not applicable, the Court's decision to abstain from hearing Nathan and S.J. Wilson's claims was clear error. *See id.* at 6.

The City Defendants object to the Wilsons' request for reconsideration. As a threshold argument, the City Defendants claim that reconsideration is not warranted because the motion does little more than present arguments that were not developed on the motion to dismiss. *See Def.s' Resp.* at 4-5, Dkt. 43. In the event that the Court decides to review the application of *Younger* to the case at hand, the City Defendants argue that *Younger's* bad faith exception is inapplicable to Rory and that the Court correctly extended *Younger* abstention to Nathan and S.J. Wilson. *See id.* at 6-14.

On October 12, 2024, the Court stayed this case until the Idaho Court of Appeals resolved Rory Wilson's appeal of his criminal conviction. *See* Dkt. 37. Since then, Rory has continued challenging his conviction. On April 16, 2024, the Idaho Court of Appeals heard oral argument on Rory's appeal. On June 25, 2024, the Idaho Court of Appeals affirmed the district court's ruling on the intermediate appeal. *See State v. Wilson*, No. 50802, 2024 WL 3108304, at *1 (Idaho Ct. App.

June 25, 2024).

Despite the significant impacts of Rory's underlying criminal proceedings, the parties have not provided the Court with an update regarding the status of his criminal case.[4] The Court has not been advised as to whether Rory is continuing to appeal his conviction or whether he has decided to accept the Court of Appeal's ruling as a final determination in his case.[5] Nevertheless, the Court will now address the Wilsons' motion for reconsideration.

## LEGAL STANDARD

The Wilsons bring their motion to reconsider under Federal Rule of Civil Procedure 54(b). *See Motion*, Dkt. 31. Rule 54(b) allows an order to be revised at any time under the Court's inherent authority. *City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *see also Cummings v. Stewart Title Guar. Co.*, No. 4:15-CV-00599-BLW, 2020 WL 4455110, at *1 (D. Idaho Aug. 3, 2020) ("Courts have inherent power to modify their interlocutory orders before entering a final judgment."). A motion to reconsider an interlocutory ruling

---

[4] In fact, the Court was not informed that the Idaho Court of Appeals had issued a ruling on Rory's appeal. Instead, the Court has located the decision through its own research.

[5] It appears that Rory has an avenue to petition the Idaho Supreme Court to review the Court of Appeal's opinion. *See* Idaho App. R. 118(a)-(b). The Court, however, is unaware if Rory is pursuing a review or if the Idaho Supreme Court has already made a decision on a petition.

requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979). Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous.  There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F. Supp. 568, 572 (N.D. Cal. 1981) (Schwartzer, J.).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). A motion to reconsider is an extraordinary remedy and is not intended to provide litigants with a "second bite at the apple." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001).

When determining the merits of a request to reconsider an interlocutory

order, both this Court and district courts throughout the Ninth Circuit are frequently guided by substantially the same standards as those used to reconsider final orders pursuant to Rule 59(e). *See Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2020 WL 2841517, at *10 (D. Idaho June 1, 2020). Under Rule 59, reconsideration may be warranted: (1) because of newly discovered evidence; (2) because the Court committed clear error or the order was manifestly unjust; or (3) due to an intervening change in the law. *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

## ANALYSIS

### A.    Exception to *Younger*

The first issue that the Wilsons ask this Court to reconsider is whether the bad faith or harassment exception to *Younger* should apply. Specifically, the Wilsons take issue with the Court's decision to refrain from evaluating whether an exception to *Younger* was applicable in this case, claiming that the material facts supporting their argument were clearly and distinctly set forth in the background section of their brief. *See Pl.s' Br.* at 3-4, Dkt. 31.

Initially, the Court's comments were not so much directed at the inclusion—or lack—of certain facts in the background section, but at the minimal explanation of the legal contours of *Younger's* exceptions and a developed application of the

facts to the law. *See Pl.s' MTD Resp.* at 11, Dkt. 24. The Wilsons' argument in their opposition to the motion to dismiss was threadbare.[6] *See id.* The Court is not required to address cursory arguments that are not fully developed. *See On Demand Direct Response, LLC v. McCart-Pollak*, No. 215CV01576MMDNJK, 2018 WL 2014067, at *1 (D. Nev. Apr. 30, 2018) ("Arguments must be meaningfully developed in the briefing for the Court to address them.").

In other words, the Wilsons' argument is one that could have and should have been presented in opposition to the motion to dismiss. The Wilsons do not rely on any newly discovered evidence or change in intervening law. Rather, the Wilsons are essentially attempting to take another "bite of the apple." Generally, these types of arguments do not justify reconsideration. However, because the Court believes it would be unjust to abstain under *Younger* where a "bad faith" exception may be applicable, the Court will address the merits of the Wilsons' argument.

"*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." *Arevalo v. Hennessy*, 882 F.3d 763,

---

[6] The Wilsons' argument in their response was almost exclusively made up of a single citation to a Second Circuit case while providing no explanation of the framework of the law or its application to the facts of this case. *See Pl.s' MTD Resps.* at 11, Dkt. 24. The extent of the Wilsons' analysis was a conclusory statement that "[t]hese circumstances exist in this case." *Id.*

765 (9th Cir. 2018) (quoting *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1091–92 (9th Cir. 2008)). However, even where the requirements of *Younger* are met, abstention may not be proper where there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 435, (1982)). The Ninth Circuit has explained that bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (quoting *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6 (1975).

Given that Rory has already been convicted of violating Moscow City Code § 10-1-22—which two separate Idaho courts have now upheld—it cannot be said that the prosecution was brought "without a reasonable expectation of obtaining a valid conviction." Nor does it appear that the Wilsons are arguing any differently. Instead, the Wilsons clarify that the gravamen of their bad faith claim is "selective enforcement of the law to retaliate for and to deter constitutionally protected conduct and to harass Plaintiffs on account of their political and religious belief." *See Pls.' Reply* at 3, Dkt. 35. The Wilsons appear to argue that under the

"harassment" exception, the reasonable expectation of obtaining a valid conviction is irrelevant.[7] In making their argument, the Wilsons again provide a single quote from *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).

The Court is not persuaded that the bad faith or harassment exception applies to the case at hand. While the Ninth Circuit has cited to the Second Circuit concerning the *Younger* bad faith exception, it has never relied on *Cullen* in a published opinion, *see Flowers v. Seki*, 87 F.3d 1318 (9th Cir. 1996) (citing *Cullen* in a string citation in an unpublished opinion), and the Wilsons have not pointed to any binding authority that has held that the bad faith exception is available in cases of harassment regardless of a reasonable expectation of containing conviction.

Moreover, a subsequent Second Circuit case, *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002), significantly narrowed *Cullen's* apparent expansive holding, and that decision has been specifically approved by the Ninth Circuit, this time in a published opinion. *See Applied Underwriters, Inc.*

---

[7] Interestingly, it was not until the Wilsons' Reply that they made any real attempt to put the proverbial meat on the bones of their argument. *Compare Pl.s' Br.* at 2-6, Dkt. 31-1 (providing no legal argument or authority regarding the *Younger* exceptions, but rather pointing to facts that were contained in the background section of their opposition); *with Pl.s' Reply* at 1-3, Dkt. 35 (providing, albeit limited, legal argument regarding the bad faith exception).

*v. Lara*, 37 F.4th 579, 596 (9th Cir. 2022) (citing approvingly to *Diamond "D" Const. Corp.*).

In *Diamond "D" Const. Corp.*, the Second Circuit explained that "[t]o invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." 282 F.3d at 199. In conducting this inquiry, the court explained, "subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *Id.* The court then unequivocally clarified that "it is only when the state proceeding is brought with no legitimate purpose that this state interest in correcting its own mistakes dissipates, and along with it, the compelling need for federal deference." *Id.* at 200. In fact, it is this concept that the Ninth Circuit seems to have adopted. *See Applied Underwriters, Inc.*, 37 F.4th at 596 ("'it is only when the state proceeding is brought *with no legitimate purpose* that [the] state interest in correcting its own mistakes dissipates' and the 'bad faith' exception to *Younger* applies.") (quoting *Diamond "D" Const. Corp.*, 282 F.3d at 200) (emphasis original).

While the Court acknowledges that the Wilsons' allegations raise concerns about some conduct of some individuals involved in Rory's prosecution, the Court does not find that this case warrants federal intervention. Initially, Ninth Circuit

law still appears to require that the underlying state court proceedings be brought without a reasonable expectation of obtaining a conviction or with no legitimate purpose, which cannot be met here. *See Applied Underwriters, Inc.*, 37 F.4th at 596; *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003); *see also Perez v. Ledesma*, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith *without hope of obtaining a valid conviction* and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief appropriate.") (emphasis added). Moreover, even under a more expansive application of the bad faith and harassment exception, the Court still finds that it should abstain under *Younger*.

To explain, there are insufficient allegations to determine that the City initiated its proceedings to harass Rory. *See, e.g., Diamond "D" Const. Corp.*, 282 F.3d at 200 (finding that bad faith exception inapplicable because the administrative proceedings were not "driven by a retaliatory motive or by some other nefarious purpose," rather, the wage investigation was initiated "in response to the written allegations of underpayments,[]" and other "statutory duties[.]"). It is undisputed that the interaction with the Moscow Police Department was initiated based on a citizen report. *See Am. Compl.* at 2, Dkt. 8. Further, there does not

**MEMORANDUM DECISION AND ORDER - 11**

appear to be any serious debate that Rory and his brother were, in fact, placing decals around the City of Moscow in the early morning of October 6, 2021, while wearing hijabs. Additionally, while there are allegations of interactions between Moscow police and the greater church community that Rory was a member of, there are no serious allegations Rory has been the victim of multiple prosecutions. *See Partington v. Gedan*, 961 F.2d 852, 862 (9th Cir. 1992), as amended (July 2, 1992) (finding that the "bad faith and harassment" exception to *Younger* was not applicable where "there was no allegation of repeated harassment by enforcement authorities with no intention of securing a conclusive resolution by an administrative tribunal or the courts" or "of pecuniary bias by the tribunal[.]") (citation omitted); *Kihagi v. Francisco*, No. 15-cv-01168-KAW, 2016 WL 5682575, at *4 (N.D. Cal. Oct. 3, 2016) ("Evidence of bad-faith harassment must be more than multiple prosecutions, must be more than conclusory statements about motive, must be more than a weak claim of selective prosecution, and must be more than the prosecution of close cases.") (internal quotation marks omitted).

More importantly, there are no allegations that either the magistrate court, district court, or the Idaho Court of Appeals are biased or have any pecuniary interest in Rory's prosecution. The Ninth Circuit has explained that "where there are allegations of 'repeated judicial authorization' for the alleged bad faith conduct

of the federal defendant, 'we cannot agree that bad faith and harassment were made out' unless there is an allegation that the judicial authorization itself was steeped in the bad faith actions of the judicial officers involved[.]" *Applied Underwriters, Inc.*, 37 F.4th at 597 (quoting *Hicks v. Miranda*, 422 U.S. 332, 351 (1975)); *see also Partington*, 961 F.2d at 862. Two independent Idaho courts have now upheld Rory's conviction, addressing many of the same claims being made before this Court.[8] There is no reason to believe that these courts were inadequate venues for Rory to challenge his conviction or make any constitutional arguments.

Simply put, the Court cannot find that the state court proceedings were brought with "no legitimate purpose" warranting immediate federal intervention. Again, while there are allegations of concerning, and even potentially unconstitutional, conduct that occurred at some point during the City's prosecution, Rory has been found guilty, and that conviction continues to be upheld in state court. *See Diamond "D" Const. Corp.*, 282 F.3d at 199 ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—

---

[8] The application of the bad faith exception might have been a much tougher decision to make if the Wilsons' had brought this lawsuit before Rory was convicted, and that conviction was affirmed twice. This judicial recognition of the legitimacy of Rory's prosecution clearly supports this Court's conclusion that there has been an inadequate showing that the state court proceedings had no legitimate purpose.

MEMORANDUM DECISION AND ORDER - 13

even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception."). For this Court to step in at this stage with no allegations of judicial bias or pecuniary gain would fly in the face of *Younger's* fundamental principles of equity, comity, and federalism. *Gilbertson v. Albright*, 381 F.3d 965, 972 (9th Cir. 2004) ("the [Supreme] Court distilled the comity principles that animate abstention—that the state's interest in the administration of its judicial system is important, that federal court interference would be an offense to the state's interest, and that such interference would both unduly interfere with the legitimate activities of the state and readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.") (citations omitted).

### B.    Application of *Younger* to Nathan and S.J. Wilson

Next, the Wilsons' claim that Court erred by extending *Younger* to Nathan and S.J. Wilson since they were not parties to any ongoing state court litigation. *See Pl.s' Br.* at 8, Dkt. 31-1. Specifically, the Wilsons take issue with the Court's determination that this case is more akin to *Hicks v. Miranda*, 422 U.S. 332 (1975) and *Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019) than it is to *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975).

The Wilsons' first argument is both procedurally and substantively flawed.

**MEMORANDUM DECISION AND ORDER - 14**

Nowhere in the Wilsons' response to the motion to dismiss did they raise anything similar to its current argument—that a common interest in property is determinative to the *Younger* analysis. *See Cummings v. Stewart Title Guar. Co.*, No. 4:15-CV-00599-BLW, 2020 WL 4455110, at *2 (D. Idaho Aug. 3, 2020) (A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."). Additionally, the Wilsons do not rely on any intervening change in law; instead, their argument is based on the very cases the Court based its decision on. More importantly, the Court is not persuaded that their arguments accurately state the law.

While a common interest in property is undoubtedly a factor to be considered, the Wilsons have provided no authority that unequivocally confirms that a shared property interest is necessary to apply *Younger* to non-party federal plaintiffs. Rather, the appropriate question is whether plaintiffs' interests are so inextricably intertwined that direct interference with the state court proceeding is inevitable. *See Herrera*, 918 F.3d at 1047 ("our court has suggested that parties with "a sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention."); *Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013) ("Such circumstances are present only when a federal plaintiff's interests are so intertwined with those of the state court party that

. . . interference with the state court proceeding is inevitable.") (quotations omitted); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 881–82 (8th Cir. 2002) ("parties in federal and state court need not be identical where the interests of the parties seeking relief in federal court are closely related to those of parties in pending state proceedings and where the federal action seeks to interfere with pending state proceedings.") (citation and quotations omitted); *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 82 (2d Cir. 2003) ("While both *Hicks* and *Doran* arguably focus on the fact of joint ownership and control, neither decision limits the application of *Younger* to cases where the parties are financially related or linked by mutual management. Courts have consistently recognized that while congruence of interests is not enough, by itself, to warrant abstention, where the plaintiffs' interests are so inextricably intertwined that direct interference with the state court proceeding is inevitable, *Younger* may extend to bar the claims of plaintiffs who are not party to the pending state proceeding.") (cleaned up).

Next, the Wilsons claim that the Court's reliance on *Hicks* and *Doran*, instead of *Steffel v. Thompson*, 415 U.S. 452 (1974), warrants reconsideration. *See Pls.' Br.* at 9, Dkt. 31-1. The Wilsons further argue that *Steffel* "is on point and compels the Court to grant" their motion for reconsideration. While the Court notes that the case law on "derivative abstention" is far from a picture of clarity, it is not

persuaded that *Steffel* compels a different outcome.

Although the Wilsons are correct that the Court did not expressly address *Steffel*, it did not believe, nor does it now, that it is no longer good law. Rather, the Court relied on the *Hicks* and *Doran*, two Supreme Court cases decided after *Steffel*, as a more useful and refined example of how to apply *Younger* to federal plaintiffs that are not parties to state court proceedings. Furthermore, the Ninth Circuit—as well as many other circuits—have continually relied on *Hicks* and *Doran* to discuss this issue. *See Canatella v. California*, 404 F.3d 1106, 1115 (9th Cir. 2005) ("We find Bendel and Canatella's relationship and congruence of interests to be more like those of the bar owners in *Doran* than the theater owners and their employees in *Hicks.*"); *Green v. City of Tucson*, 255 F.3d 1086, 1100 (9th Cir. 2001) (en banc), *overruled on other grounds, Gilbertson v. Albright,* 381 F.3d 965 (9th Cir. 2004) ("Together, then, *Hicks* and *Doran* circumscribe the quite limited circumstances under which *Younger* may oust a district court of jurisdiction over a case where the plaintiff is not a party to an ongoing state proceeding[.]"); *Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 42 (1st Cir. 2012) ("The Supreme Court has addressed in two cases whether distinct but very closely related parties should be treated the same for purposes of *Younger* abstention[.]").

Moreover, as courts have noted, it is not easy to reconcile the reasoning of

*Steffel*, *Hicks*, and *Doren*. As such, the Court relied on the Ninth Circuit's development of the legal contours of *Younger*, particularly the recently decided *Herrera* case, in its analysis. Accordingly, the Court does not find that it applied incorrect or non-binding authority in its decision.

Outside of the discussed challenges to the Court's application of *Younger's* legal principles, the Wilsons did not explain how Nathan and S.J. Wilson could proceed on their claims without interfering with Rory's state court proceedings. The Wilsons do claim that the Court could fashion an injunctive remedy that expressly excluded Rory or that would apply only to future prosecutions. They do not, however, provide any authority showing that a court has done so. *See Pl.s' Br.* at 10, Dkt. 31-1.

The Court, therefore, is not persuaded that a change to its prior ruling is necessary. Rather, this case continues to present the quite limited circumstances where the Wilsons' claims are so intertwined as to extend *Younger* to all the plaintiffs. *See, e.g., Cedar Rapids Cellular Tel., L.P.*, 280 F.3d at (applying *Younger* to a non-party Federal Plaintiff because the "serious possibility of interference warrants abstention[.]"); *Brandy Found. Animal Sanctuary v. San Bernardino Cnty., No.* CV0802292DDPPLAX, 2009 WL 10698907, at *8 (C.D. Cal. Jan. 26, 2009) (finding that the "principles of comity that motivate *Younger*

**MEMORANDUM DECISION AND ORDER - 18**

abstention" were crucially implicated because non-party defendants had "brought their action under the same complaint on the basis of the exact same events."); *but see Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013) (declining to abstain where "the relief sought in federal court [by non-state court parties] would not disturb the validity of the [state court] Order as to any of the [state court] parties against whom it issued.").  Thus, the Court will deny the Wilsons' request to reconsider its prior holding on extending *Younger* to Nathan and S.J. Wilson.

### C.    Conclusion

The Court acknowledges that this matter presents a difficult decision on whether it should abstain under *Younger*. After significant consideration, it finds that the principles of equity, comity, and federalism direct this Court to abstain due to Rory's ongoing criminal proceedings. That said, the Court notes that *Younger* does not demand that the Wilsons' claims for damages be dismissed. Rather, those claims will be stayed until Rory's state court proceedings are resolved. Further, dismissal based on *Younger* is not a decision on the merits. *Goings v. Sumner Cnty. Dist. Attorney's Off.*, 571 F. App'x 634, 639 (10th Cir. 2014) ("For our purposes— formal semantics aside—the salient point is that *Younger* required the district court *not to rule* on the merits") (emphasis original). Accordingly,

### ORDER

**IT IS ORDERED that:**

1.    Plaintiff's Motion for Reconsideration (Dkt. 31) is **DENIED**.

DATED: September 30, 2024

B. Lynn Winmill
U.S. District Court Judge