Law Offices of
Magyar, Rauch & Associates, PLLC
Gregory R. Rauch ISB#7389
326 East Sixth Street
Moscow, Idaho 83843
Tel: (208) 882-1906
rauch@mralegal.com
holt@mralegal.com

*Local Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATHAN DAVID WILSON, *et al.*, | |
| Plaintiffs, | Case No. 3:22-cv-421-CWD |
| v. | |
| CITY OF MOSCOW, *et al.*, | |
| Defendants. | |

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS [Dkt. 49]**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ....................................................................................................... 1

STANDARD OF REVIEW .......................................................................................... 1

SECOND AMENDED COMPLAINT .......................................................................... 2

ARGUMENT .............................................................................................................. 3

I.  Plaintiffs Have Advanced Plausible Claims for Declaratory and Injunctive Relief ........... 3

II.  The Court Should Enjoin the Future Enforcement of the City Ordinance ......................... 9

III.  Plaintiffs Have Advanced Plausible Claims for Damages ................................................. 12

    A.  First Amendment ......................................................................................... 12

        1.  Retaliation ......................................................................................... 12

        2.  Prior Restraint ................................................................................... 13

        3.  Content- and Viewpoint-Based Restriction on Speech ....................... 13

    B.  Fourteenth Amendment ................................................................................ 15

        1.  Selective Prosecution ......................................................................... 15

        2.  Equal Protection ................................................................................ 16

    C.  Fourth Amendment: Excessive Force ........................................................... 17

    D.  Coerced Interrogation: Fifth Amendment and Due Process ........................... 18

IV.  The Defendant Officers Do Not Enjoy Qualified Immunity ............................................. 20

CONCLUSION ........................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Acosta v. Idaho Falls Sch. Dist. No. 91*,
291 F. Supp. 3d 1162 (D. Idaho 2017) ................................................................8

*Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*,
898 F. Supp. 2d 73 (D.D.C. 2012)........................................................................9

*Am. Trial Lawyers Ass'n v. N.J. Sup. Ct.*,
409 U.S. 467 (1973).............................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................1

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963)...........................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................1

*Bench Billboard Co. v. City of Cincinnati*,
675 F.3d 974 (6th Cir. 2012) ............................................................................15

*Berkshire Invs., LLC v. Taylor*,
153 Idaho 73, 278 P.3d 943 (2012).....................................................................7

*Brown v. Cal. DOT*,
321 F.3d 1217 (9th Cir. 2003) ...........................................................................14

*Brown v. Entm't Merchs. Ass'n*,
564 U.S. 786 (2011)...........................................................................................10

*Buckley v. Fitzsimmons*,
20 F.3d 789 (7th Cir. 1994) ...............................................................................18

*Byrd v. Idaho State Bd. of Land Comm'rs*,
169 Idaho 922, 505 P.3d 708 (2022)....................................................................7

*Carey v. Brown*,
447 U.S. 455 (1980)...........................................................................................16

*Carey v. Piphus*,
435 U.S. 247 (1978)...........................................................................................13

*Carmona v. Carmona*,
603 F.3d 1041 (9th Cir. 2010) ................................................................5

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) ................................................................11

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) ................................................................11

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
473 U.S. 788 (1985) ................................................................13

*Cox v. N.H.*,
312 U.S. 569 (1941) ................................................................10

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*,
477 F.3d 807 (6th Cir. 2007) ................................................................20

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ................................................................6

*Doud v. Hodge*,
350 U.S. 485 (1956) ................................................................3

*Eng. v. La. State Bd. of Med. Exam'rs*,
375 U.S. 411 (1964) ................................................................3

*Franklin v. Foxworth*,
31 F.3d 873 (9th Cir. 1994) ................................................................17

*Freeman v. City of Santa Ana*,
68 F.3d 1180 (9th Cir. 1995) ................................................................15

*Gibson v. Credit Suisse AG*,
No. 1:10-CV-00001-JLQ, 2016 U.S. Dist. LEXIS 201836 (D. Idaho Apr. 29, 2016) ................8

*Graham v. Connor*,
490 U.S. 386 (1989) ................................................................17

*Hardesty v. City of Ecorse*,
623 F. Supp. 2d 855 (E.D. Mich. 2009) ................................................................19

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ................................................................20

*Harrison v. NAACP*,
360 U.S. 167 (1959)..............................................................................................3

*Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*,
452 U.S. 640 (1981)............................................................................................11

*Hill v. Colo.*,
530 U.S. 703 (2000)............................................................................................11

*Int'l Outdoor, Inc. v. City of Troy*,
974 F.3d 690 (6th Cir. 2020) ..............................................................................9

*Lake Carriers' Assn. v. MacMullan*,
406 U.S. 498 (1972)..............................................................................................3

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
508 U.S. 384 (1993)............................................................................................14

*Law v. City of Post Falls*,
772 F. Supp. 2d 1283 (D. Idaho 2011) ..............................................................17

*Lozman v. City of Riviera Beach*,
585 U.S. 87 (2018)........................................................................................12, 20

*Matal v. Tam*,
582 U.S. 218 (2017)............................................................................................15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ............................................................................1

*Miller v. City of Cincinnati*,
622 F.3d 524 (6th Cir. 2010) ............................................................................13

*Miller v. Clark Cnty.*,
340 F.3d 959 (9th Cir. 2003) ............................................................................17

*Mustfov v. Superintendent of Chi. Police Dep't*,
733 F. Supp. 283 (N.D. Ill. 1990) ....................................................................8, 9

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982)............................................................................................12

*Niemotko v. Md.*,
340 U.S. 268 (1951)............................................................................................11

*Nieto v. Flatau*,
715 F. Supp. 2d 650 (E.D.N.C. 2010) .......................................................................14

*Nieves v. Bartlett*,
587 U.S. 391 (2019) ....................................................................................................13

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .........................................................................................1

*Police Dep't of Chi. v. Mosley*,
408 U.S. 92 (1972) ......................................................................................................16

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) ....................................................................................................14

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ....................................................................................................14

*RLR Invs., LLC v. City of Pigeon Forge*,
4 F.4th 380 (6th Cir. 2021) ...........................................................................................5

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ....................................................................................................14

*Shuttlesworth v. City of Birmingham*,
394 U.S. 147 (1969) ...............................................................................................11, 12

*Se. Promotions, Ltd. v. Conrad*,
420 U.S. 546 (1975) ....................................................................................................11

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......................................................................................2

*Staub v. City of Baxley*,
355 U.S. 313 (1958) ....................................................................................................11

*Steffel v. Thompson*,
415 U.S. 452 (1974) ......................................................................................................6

*Stemler v. City of Florence*,
126 F.3d 856 (6th Cir. 1997) ......................................................................................16

*Telescope Media Group v. Lucero*,
936 F.3d 740 (8th Cir. 2019) ......................................................................................10

*United States v. Armstrong,*
517 U.S. 456 (1996) ................................................................................................16

*United States v. Grace,*
461 U.S. 171 (1983) ................................................................................................10

*Vanderkodde v. Mary Jane M. Elliott, P.C.,*
951 F.3d 397 (6th Cir. 2020) ..............................................................................4, 5

*Vangilder v. Baker,*
435 F.3d 689 (7th Cir. 2006) ..................................................................................18

*Vega v. Tekoh,*
597 U.S. 134 (2022) ................................................................................................18

*Wayte v. United States,*
470 U.S. 598 (1985) ................................................................................................15

*Wooley v. Maynard,*
430 U.S. 705 (1977) ..............................................................................................5, 8

*Zubkis v. Vacco,*
No. 97-56309, 1998 U.S. App. LEXIS 27815 (9th Cir. Oct. 26, 1998) .........................4

*Zwickler v. Koota,*
389 U.S. 241 (1967) ..................................................................................................3

## **Statutes**

42 U.S.C. § 1983 ......................................................................................................18

Fed. R. Civ. P. 8(a)(2) ................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 2

## INTRODUCTION

Plaintiffs are the targets of retaliatory and selective enforcement of the law by Defendants because of their speech critical of Defendant City of Moscow ("City") and their membership in Christ Church.[1]  The City has created a forum for a wide-array of speech, but Defendants punished Plaintiffs' use of this forum based on the content and viewpoint of their message, and the City did so by selectively enforcing a patently unconstitutional City ordinance against them.[2]

## STANDARD OF REVIEW

Defendants' motion to dismiss tests the legal sufficiency of the Second Amended Complaint.  Pursuant to Rule 8(a), the pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Accordingly, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a complaint need only allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the complaint, the court must accept factual allegations in the complaint as true and construe the pleading in the light most favorable to the nonmoving party.  *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a

---

[1] Plaintiffs will be individually referred to in this brief by their first names.
[2] The City ordinance at issue is Title 10, Chapter 1, Section 22 (hereinafter "City Ordinance"). (Second. Am. Compl. ["SAC"] ¶ 51, Dkt. No. 48).

motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## SECOND AMENDED COMPLAINT

Plaintiffs filed a factually-detailed Second Amended Complaint setting forth multiple claims for relief arising under the First, Fourth, Fifth, and Fourteenth Amendments.[3]

Plaintiffs' First Amendment claim is premised upon three separate and independent legal bases. First, Defendants' disfavored treatment of Plaintiffs (*i.e.*, arrests, issuing citations, and prosecutions) were in retaliation for Plaintiffs' speech and based on the retaliatory policy of the City to target members of Christ Church for disfavored treatment. Second, Defendants' enforcement of the City Ordinance against Plaintiffs was content- and viewpoint-based. And third, the City Ordinance is an unconstitutional prior restraint on speech. (SAC ¶ 98).

Plaintiffs' equal protection claim is premised upon two separate and independent legal bases. First, Defendants' selective enforcement of the law against Plaintiffs (selectively arresting, citing, and prosecuting Plaintiffs) violates the equal protection guarantee of the Fourteenth Amendment.[4] And second, by denying Plaintiffs access to a forum for speech based on the content and viewpoint of their message (and punishing them for doing so), Defendants violated the equal protection guarantee of the Fourteenth Amendment (in addition to violating the First Amendment). (SAC ¶ 114).

Plaintiffs' Fifth Amendment claim is premised upon the use of coerced statements to charge and prosecute Plaintiffs. (*See* SAC ¶¶ 77-92).

---

[3] The relevant facts are set forth in detail in the Second Amended Complaint. To avoid needless repetition and in light of the limited pages allowed for a response brief, those facts will not be repeated here. Accordingly, specific references to the pleading will be for emphasis only.

[4] All Plaintiffs are seeking declaratory and injunctive relief for the violation of their rights secured by the Fourteenth Amendment, and only Nathan and Seamus are seeking damages for this claim. (SAC ¶ 123).

Rory's Fourth Amendment claim is premised upon the fact that this amendment protects against the use of unnecessary and unreasonable force to accomplish a seizure. As a result of the type and amount of force used against Rory when he was seized by City police officers assessed against the limited government interests at stake and in light of the totality of the circumstances, including the fact that Defendants Gunderson and Nunes used force against Rory to harass him and in retaliation for Rory's speech critical of the City, the force employed by Defendants against Rory was not constitutionally reasonable. (SAC ¶¶ 132-36).

## ARGUMENT

### I.    Plaintiffs Have Advanced Plausible Claims for Declaratory and Injunctive Relief.

Defendants argue that Plaintiffs' claims for declaratory and injunctive relief are barred based on three legal theories. First, Defendants argue that Plaintiffs cannot advance these claims in their amended pleading because they were already dismissed by this Court. Second, Defendants argue that the claims are barred by the *Rooker-Feldman* doctrine. And finally, Defendants argue that collateral estoppel bars the claims. (Defs.' Br. at 8-10). Defendants are mistaken.

This Court dismissed Plaintiffs' claims based on *Younger* abstention because there were *ongoing* state court proceedings involving one of the plaintiffs (Rory). The Court did not rule on the merits of the claims. (Mem. Decision & Order, Dkt. 30). As stated by the U.S. Supreme Court:

> "Abstention 'does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise.'" *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 416 (1964), quoting from *Harrison v. NAACP*, 360 U.S. 167, 177 (1959). For that reason, we have held that a dismissal on grounds of abstention so as to permit a state court to pass on an issue of state law must not be with prejudice. *Doud v. Hodge*, 350 U.S. 485 (1956); *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498 (1972). The proper course is for the District Court to retain jurisdiction pending the proceedings in the state courts. *Lake Carriers' Assn. v. MacMullan, supra*, at 512-513; *Zwickler v. Koota*, 389 U.S. 241, 244-245, n. 4 (1967). Although the District Court may have intended its judgment of dismissal to be without prejudice to the right of appellants to litigate their federal claims in federal court at the conclusion of the state proceeding, the court did deny

> appellants' motion for an amendment to the judgment making clear that no prejudice would attach. The motion should have been granted. Accordingly, we vacate the judgment of the District Court and remand the case for proceedings consistent with this opinion.

*Am. Trial Lawyers Ass'n v. N.J. S. Ct.*, 409 U.S. 467, 469 (1973). By granting Defendants' motion to dismiss based on *Younger* abstention, the Court did not issue a ruling on the merits, and the dismissal was without prejudice. *See, e.g.*, *Zubkis v. Vacco*, No. 97-56309, 1998 U.S. App. LEXIS 27815, at *4 (9th Cir. Oct. 26, 1998) ("When *Younger* abstention applies, it is appropriate to dismiss the action without prejudice because the court has not addressed the merits of the action."). In other words, there is no ruling on the merits that precludes the re-filing of these claims, and *Younger* abstention is no longer applicable as the state court proceedings have concluded. Moreover, this Court stayed the case pending resolution of the state court proceedings, thereby retaining jurisdiction over this matter. (Dkt. No. 41). Defendants' argument is without merit.

Defendants' *Rooker-Feldman* argument similarly fails. "*Rooker-Feldman* is not an abstention doctrine—that is, a 'judicially created' exception to federal-court jurisdiction. . . . Rather, *Rooker-Feldman* operates as a natural consequence of Congress's decision not to grant subject-matter jurisdiction to the federal district courts or courts of appeals to consider appeals of state-court decisions." *Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 n.2 (6th Cir. 2020) (internal citation omitted). Sixth Circuit Judge Jeffrey Sutton summarized quite well in a lengthy concurring opinion in *Vanderkodde* why *Rooker-Feldman* plainly does not apply in so many cases, including this one. Judge Sutton concludes as follows:

> Whatever the source of the problem [of wrongfully applying *Rooker-Feldman*], the remedy in the lower courts is straightforward. *Absent a claim seeking review of a final state court judgment*, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop. If the temptation lingers, the court should try something else: Reconsider. And if that does not work, the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it. The Court, I suspect, never will, and that's all we lower court judges should need to know.

- 4 -

*Vanderkodde*, 951 F.3d at 404-09 (Sutton, J., concurring) (emphasis added).

Plaintiffs are not seeking review of a final state court judgment nor do they seek review of an interlocutory state-court order, *see, e.g.*, *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 396 (6th Cir. 2021) ("Under *Rooker-Feldman*—even after *Exxon*—federal district courts don't have jurisdiction over appeals of interlocutory state-court orders."). There is no need to proceed further. The Court should "stop" any temptation to apply *Rooker-Feldman* to this case. Nowhere in the Second Amended Complaint is any Plaintiff asking this Court to review and reverse a final state court order or judgment—that is, there is nothing in the claims or prayer for relief asking this Court for such relief.[5] The Ninth Circuit confirms this view of the application of *Rooker-Feldman*:

> We have previously explained how federal courts should distinguish a forbidden de facto appeal of a state court decision that is barred by *Rooker-Feldman* from a suit that is barred by other preclusion principles. A suit brought in federal district court is a "de facto appeal" forbidden by *Rooker-Feldman* when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, *and seeks relief from a state court judgment based on that decision*." *Id*. at 1164. In contrast, if a plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id*.

*Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (emphasis added).

The Supreme Court's decision in *Wooley v. Maynard*, 430 U.S. 705 (1977), further confirms this point (and the point that there is no bar to any of Plaintiffs' claims for declaratory or injunctive relief). In *Wooley*, the appellee *was tried and convicted* for violating New Hampshire statutes requiring noncommercial motor vehicles to display license plates embossed with the state motto, "Live Free or Die," and which made it a misdemeanor to obscure the motto. The Court permitted the appellee and his wife to pursue their federal action challenging the constitutionality

---

[5] Whether collateral estoppel might apply to a prior ruling *on an issue* is a separate matter that Plaintiffs will address shortly, and it is for this purpose (addressing collateral estoppel) that portions of the state court orders were quoted in the pleading. (*See* SAC ¶¶ 63-67).

of New Hampshire's statutes even though the appellee could have but did not exhaust his appeal options in state court related to his conviction. In allowing the federal case to proceed, the Court held as follows:

> Here, . . . the suit is in no way "designed to annul the results of a state trial" since the relief sought is wholly prospective, *to preclude further prosecution under a statute alleged to violate appellees' constitutional rights*. Maynard has already sustained convictions and has served a sentence of imprisonment for his prior offenses. He does not seek to have his record expunged, or to annul any collateral effects those convictions may have, *e.g.,* upon his driving privileges. The Maynards *seek only to be free from prosecutions for future violations of the same statutes*. *Younger* does not bar federal jurisdiction.[6]

*Id*. at 711 (emphasis added); *see also Steffel v. Thompson*, 415 U.S. 452, 471 n.19 (1974) (holding that the plaintiff, who was not himself subject to prosecution in state court, could seek a declaration to halt the enforcement of a criminal trespass ordinance even though his companion, who joined him in a similar protest, was being prosecuted for violating the very same ordinance); *Doran v. Salem Inn, Inc*., 422 U.S. 922, 930 (1975) ("In the absence of [a state court proceeding involving the party]*,* a plaintiff may challenge the constitutionality of the state statute in federal court . . . ."). Similar to *Wooley*, the claims for declaratory and injunctive relief in this case are not "designed to annul the results of a state trial." Rory (the <u>only</u> Plaintiff with a final state court judgment against him) "does not seek to have his record expunged, or to annul any collateral effects" of his conviction.[7] Plaintiffs' claims for declaratory and injunctive relief "seek only to be free from prosecutions for future violations of the same" ordinance. (*See* SAC ¶¶ 94-95). *Rooker-Feldman* is inapplicable, and so too is collateral estoppel.[8] We turn now to collateral estoppel.

---

[6] While the Court highlighted that *Younger* abstention did not apply, there were no other impediments to the exercise of federal jurisdiction over the matter.

[7] (*See* SAC ¶ 123 [asserting that Rory is only seeking prospective relief]).

[8] Defendants' arguments are not precise. There are three separate plaintiffs who each had very different state court proceedings. In Rory's case, he was convicted, and he exhausted his appellate options for the issues at stake in that criminal case. For Nathan, he was charged, and during the

Res judicata comprises two legal concepts: issue preclusion, also known as collateral estoppel, and claim preclusion. *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012). Collateral estoppel bars relitigation of a previously determined issue where: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Byrd v. Idaho State Bd. of Land Comm'rs*, 169 Idaho 922, 931, 505 P.3d 708, 717 (2022).

Applying these elements here, it is evident that neither Nathan nor Seamus had (1) a full and fair opportunity to litigate the issues as the charges against them were dismissed by the prosecutors before any trial or accrual of the right to appeal. Thus, there was no final judgment on the merits against them (4). Moreover, the issues are not identical (3) as the state court's rulings were based on a different factual record.[9] And each Plaintiff was charged and prosecuted separately. In other words, they were not parties to Rory's case nor in privity (5) as each Plaintiff had a right to have his own case independently decided by a jury. Regarding privity, a court may find it for collateral estoppel purposes only if:

---

course of the proceedings, the City voluntarily dismissed the case prior to any trial or appeals. And for Seamus, the City recommended prosecution, but because he was a minor and only the County could prosecute juveniles, the charges were dismissed by the County prior to any trial or other judicial determination. The County dismissed the charges because of the City's bad faith and selective prosecution. (SAC ¶ 62). Even the Idaho Attorney General tacitly understood that the prosecution of Rory was likely brought in bad faith. (SAC ¶ 67).

[9] The state court rejected Rory's argument that "he is being prosecuted because 'the City and MPD had quite simply had enough of the messaging coming from the Christian community associated with Christ Church," asserting that "[t]his argument is not support (sic) by the record. Nothing in the factual record of this case establish the Defendant is associated with 'Christ Church' or a 'Christian,' let alone establish that this is the sole reason for the prosecution of this defendant." (SAC ¶ 65). The court in Nathan's case concluded the same. (Defs.' Ex. E at 19 ["Nothing in the factual record of this case establish the Defendant is associated with 'Christ Church' or a 'Christian,' let alone establish that is the sole reason for the prosecution of this defendant."], Dkt. No. 49-7).

> (1) the nonparty agreed to be bound by the litigation of others; (2) a "substantive legal relationship" existed between the person to be bound and a party to the first suit; (3) the nonparty was adequately represented by someone with the same interests who was a party to the first suit; (4) the nonparty assumed control over the prior litigation; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonparties.

*Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp. 3d 1162, 1167 (D. Idaho 2017) (citations omitted).  None of these factors apply.  Furthermore,

> Privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts. . . .  Privity connotes those <u>who are in law</u> so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right.

*Gibson v. Credit Suisse AG*, No. 1:10-CV-00001-JLQ, 2016 U.S. Dist. LEXIS 201836, at *35 (D. Idaho Apr. 29, 2016) (emphasis added).

In sum, collateral estoppel does not bar claims for prospective relief in this case, *see Mustfov v. Superintendent of Chi. Police Dep't*, 733 F. Supp. 283, 292 (N.D. Ill. 1990) ("[R]es judicata has no bearing on the plaintiffs' action insofar as it seeks prospective declaratory and injunctive relief regarding the constitutionality of future enforcement and prosecution of the ordinances."); *see also Wooley*, 430 U.S. at 711, nor does it bar any claims advanced by Nathan and Seamus.

Finally, Defendants do not address any *specific* claims in their section discussing the availability of declaratory or injunctive relief, but they do address *some* of the claims in their section discussing the availability of damages.  (Defs.' Br. at 11-21).  Noticeably absent from their brief is any substantive argument as to whether the City Ordinance is a prior restraint in violation of the First Amendment.  We will address that specific claim next.

## II.     The Court Should Enjoin the Future Enforcement of the City Ordinance.

The essence of Defendants' arguments is that a person convicted (or charged but never convicted as in the cases of Nathan and Seamus) under an allegedly unconstitutional ordinance may never challenge the validity or application of that ordinance after the initial criminal proceeding is complete, even when the relief sought is prospective only and independent of the prior conviction.  The logical extension of Defendants' argument is that an individual who does not successfully invalidate a first conviction under an unconstitutional ordinance will have _no_ opportunity to challenge that ordinance prospectively so as to avoid arrest and conviction for violating that same ordinance in the future.  That is not the law.  *See, e.g., Mustfov*, 733 F. Supp. at 292 (N.D. Ill. 1990) (stating that "res judicata" has no impact on the action insofar as the plaintiff "seeks prospective declaratory and injunctive relief regarding the constitutionality of future enforcement and prosecution of the ordinances").

The City Ordinance operates as a prior restraint on speech as it requires Plaintiffs to obtain a permit (written governmental approval) before being allowed to engage in their political expression on City property.[10]  *See Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 698 (6th Cir. 2020) (holding that the sign ordinance was a prior restraint because the right to display a sign that did not come within an exception *depended on obtaining either a permit or a variance*); *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 898 F. Supp. 2d 73, 79 (D.D.C. 2012) ("WMATA imposed a prior restraint because it prevented Plaintiffs from displaying their ad in WMATA stations . . . .").  "Any system of prior restraints of expression comes to this Court bearing

---

[10] The City Ordinance states, in relevant part, "No notice, sign, announcement, or other advertising matter shall be posted *on public property or public right-of-way **without prior approval**, **in writing**, **from the governmental entity** owning or controlling such public property or public right-of-way*."  (SAC ¶ 51).

a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) (collecting cases).

In order to regulate competing uses of forums for speech, the government may impose a permit requirement on those wishing to use the forum for expressive activity such as holding a march, a parade, or a rally.[11] *See Cox v. N.H.*, 312 U.S. 569, 574-76 (1941). However, such a permitting scheme must meet certain constitutional requirements. To begin, any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication. *See United States v. Grace*, 461 U.S. 171, 177 (1983). A government regulation that allows arbitrary application is "inherently inconsistent with a valid

---

[11] It is wrong as a matter of law to claim that the City Ordinance regulates conduct and not speech. (*See* SAC ¶ 66 ["If the ordinance governed pure speech and not conduct, then it would arguably be unconstitutional because it does not set for (sic) a specific process or guidelines to govern obtaining the written approval or consent required."]). The Eighth Circuit dismantled such faulty reasoning in *Telescope Media Group v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019):

> Minnesota's position is that it is regulating the Larsens' conduct, not their speech. To be sure, producing a video requires several actions that, individually, might be mere conduct: positioning a camera, setting up microphones, and clicking and dragging files on a computer screen. But what matters for our analysis is that these activities come together to produce finished videos that are "medi[a] for the communication of ideas." . . ; *see also Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011) ("Whether government regulation applies to creating, distributing, or consuming speech makes no difference.").

> If we were to accept Minnesota's invitation to evaluate each of the Larsens' acts individually, then wide swaths of protected speech would be subject to regulation by the government. The government could argue, for example, that painting is not speech because it involves the physical movements of a brush. Or it could claim that publishing a newspaper is conduct because it depends on the mechanical operation of a printing press. It could even declare that a parade is conduct because it involves walking. Yet there is no question that the government cannot compel an artist to paint, demand that the editors of a newspaper publish a response piece, or require the organizers of a parade to allow everyone to participate. . . . Speech is not conduct just because the government says it is.

*Telescope Media Grp.*, 936 F.3d at 752. Similarly, speech is not conduct simply because a state court judge says it is. (*See* SAC ¶ 66).

time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981).  Indeed, "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).  To prevent this risk, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license" must contain "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969).

On its face, the City Ordinance establishes a licensing scheme whereby any person who desires to post a notice or sign (First Amendment activity)[12] on City property must first obtain written approval.  The ordinance is constitutionally infirm because it does not specify how to obtain such approval nor does it impose any limits upon the government officials who would be responsible for enforcing the ordinance's approval-based regime.  Indeed, "[n]o standards appear anywhere; no narrowly drawn limitations; no circumscribing of this absolute power; no substantial interest of the community to be served."  *Niemotko v. Md.*, 340 U.S. 268, 272 (1951).  Consequently, the City Ordinance violates the First Amendment as a matter of law and should be enjoined.  *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560-62 (1975) (striking down the licensing scheme for the use of a municipal theater for lack of procedural safeguards); *Staub v. City of Baxley*, 355 U.S. 313, 325 (1958) (striking down an ordinance that made "enjoyment of speech contingent upon the will of the Mayor and Council of the City"); *Shuttlesworth*, 394 U.S.

---

[12] *See, e.g., Hill v. Colo.*, 530 U.S. 703, 714-15 (2000) ("[S]ign displays . . . are protected by the First Amendment."); *City of Ladue v. Gilleo*, 512 U.S. 43, 54 (1994) (observing that signs conveying political messages are "absolutely pivotal speech").

at 150–51 (striking down an ordinance that granted "virtually unbridled and absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways").

## III.    Plaintiffs Have Advanced Plausible Claims for Damages.

### A.    First Amendment.

#### 1.    Retaliation.

To be clear, Plaintiffs are not advancing a malicious prosecution claim, which is typically brought under the Fourth Amendment.  *See Thompson v.* Clark, 596 U.S. 36, 49 (2022).  Plaintiffs are advancing a retaliation claim arising under the First Amendment.  In *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018), the plaintiff alleged that the City deprived him of his First Amendment rights by retaliating against him for his lawsuit against the City and his criticisms of public officials.  The Court noted that "Lozman's speech is high in the hierarchy of First Amendment values," *id.*, similar to Plaintiffs' speech at issue here.[13]  As the Court noted:

> An official retaliatory policy is a particularly troubling and potent form of retaliation, for a policy can be long term and pervasive, unlike an *ad hoc*, on-the-spot decision by an individual officer.  An official policy also can be difficult to dislodge.  A citizen who suffers retaliation by an individual officer can seek to have the officer disciplined or removed from service, but there may be little practical recourse when the government itself orchestrates the retaliation.  For these reasons, when retaliation against protected speech is elevated to the level of official policy, there is a compelling need for adequate avenues of redress.

*Id.* at 100.  Here, retaliation against Plaintiffs for their speech activity has been "elevated to the level of official policy."  (*See, e.g.,* SAC ¶¶ 93, 98, 105, 122, 136).  Accordingly, Plaintiffs need <u>not</u> prove an absence of probable cause to maintain their First Amendment retaliation claim in this

---

[13] There can be no dispute that Plaintiffs' speech, as expressed on the Soviet Moscow protest decals (SAC ¶¶ 24-27), is core political speech protected by the First Amendment.  *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (recognizing "that expression on public issues has always rested on the highest rung of the hierarchy of First Amendment values") (internal quotations and citations omitted)

case. *See id*. at 101 ("Lozman need not prove the absence of probable cause to maintain a claim of retaliatory arrest"). In short, this case is *Lozman*; it is not *Nieves v. Bartlett*, 587 U.S. 391 (2019). That is, this is not a "typical retaliatory arrest claim" with no evidence of a broader retaliatory policy against the plaintiff. Here, Defendants retaliated against Plaintiffs based on their speech critical of the City and the City's animus toward members of Christ Church, which includes Plaintiffs. (*See, e.g.,* SAC ¶¶ 82, 85-90, 93, 98, 105, 122, 136).

### 2.    Prior Restraint.

As set forth in § II above, the City Ordinance operates as an unconstitutional prior restraint on speech and should be enjoined, and the enforcement of this ordinance against Nathan and Seamus has caused damages, including nominal damages, which are awarded upon finding a constitutional violation. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978).

### 3.    Content- and Viewpoint-Based Restriction on Speech.

"The [Supreme] Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for [expressive] purposes." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985). Forum analysis has traditionally divided government property into three general categories: traditional public forums, designated public forums, and nonpublic forums.[14] *Id*. at 800. Once the forum is identified, the Court must then determine whether the speech restriction is justified by the requisite standard. *Id.*

---

[14] Some courts treat a nonpublic forum and a limited public forum the same for purposes of applying the appropriate level of scrutiny. *See, e.g., Miller v. City of Cincinnati*, 622 F.3d 524, 535-36 (6th Cir. 2010); *see also Flint v. Dennison*, 488 F.3d 816, 830-31 (9th Cir. 2007) (describing a "limited public forum" as "a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics") (internal citations and quotations omitted).

A public forum is created, as in this case, when the government "intentionally open[s] a nontraditional forum for public discourse." *Id.* at 802. To discern the government's intent, courts "look[] to the policy and practice of the government" as well as "the nature of the property and its compatibility with expressive activity." *Id.* Here, the City has long permitted the posting of signs and other expressive matter on its property. (SAC ¶¶ 29-33, 45-49, 57-60). The property is plainly compatible for the speech at issue. (*See id.*). And the City Ordinance expressly permits this speech (upon written approval). In sum, a forum for speech has been created.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995); *see Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Content-based laws . . . are presumptively unconstitutional."); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992). And "[v]iewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. Accordingly, "[t]he principle that has emerged from [Supreme Court] cases is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (internal quotations and citation omitted). Indeed, even in a nonpublic forum, viewpoint discrimination is prohibited. *See Brown v. Cal. DOT*, 321 F.3d 1217, 1222 (9th Cir. 2003) (citation omitted) (finding that state highway overpass fences were not a public forum but affirming a preliminary injunction against the California Department of Transportation's policy of allowing American flags but prohibiting other signs and banners on the fences as a violation of the First Amendment); *Nieto v. Flatau*, 715 F. Supp. 2d 650 (E.D.N.C. 2010) (holding that a speech

restriction on a military base, a nonpublic forum, was viewpoint based as applied to anti-Islam decals posted on vehicles entering the base in violation of the First Amendment); *see also Matal v. Tam*, 582 U.S. 218 (2017) (holding that the Patent and Trademark Office engaged in viewpoint discrimination when it denied the registration mark of a rock group because the government office found it "offensive").

Here, Defendants' adverse actions against Plaintiffs (arrests, citations, and prosecutions) were based on the content and viewpoint of the message Plaintiffs sought to convey, in violation of the First Amendment.  (*See, e.g.* SAC ¶¶ 42, 60-62, 57, 67, 86-89, 93, 94).

## B.     Fourteenth Amendment.

### 1.     Selective Prosecution.

To state an equal protection claim based upon a theory of selective prosecution, Plaintiffs must allege (1) that others similarly situated have not been prosecuted for the same conduct and (2) that the prosecution is based on an impermissible motive.  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995); *Wayte v. United States*, 470 U.S. 598, 608 (1985) ("[T]he decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, *including the exercise of protected statutory and constitutional rights*.") (internal quotations and citations omitted) (emphasis added).  Here, Plaintiffs have set forth facts showing (1) that the conduct for which they were arrested/charged is routinely engaged in by other members of the community.  That is, others similarly situated (*i.e.,* persons who have posted fliers or signs) have not been arrested or prosecuted for the same conduct,[15] and (2) that the

---

[15] The ordinance does not require the posting of a certain number of signs or flyers nor does it require a police officer to observe the posting in order to trigger a violation.  (*See* SAC ¶ 51); *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) ("In determining whether individuals are 'similarly situated,' a court should not demand exact correlation, but

arrests and prosecutions of Plaintiffs were based on Plaintiffs' religion / religious beliefs and the exercise of their constitutional right to engage in speech critical of the City (*i.e.*, the impermissible motive). The absence of probable cause is <u>*not*</u> necessary to advance these claims. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) ("The courts have long held that a selective enforcement claim may be available even where there is probable cause for prosecution."); *see generally United States v. Armstrong,* 517 U.S. 456, 464 (1996). In sum, Plaintiffs' claims for prospective relief based on selective enforcement of the law should not be dismissed nor should Nathan's and Seamus's claims for damages.

### 2.    Equal Protection.

By denying Plaintiffs access to a forum for speech based on the content and viewpoint of their message (and punishing them for doing so), Defendants violated the equal protection guarantee of the Fourteenth Amendment (in addition to violating the First Amendment, as argued above). The principle of law at issue here was articulated by the Supreme Court as follows: "[U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the <u>*use of a forum*</u> to people whose views it finds acceptable, but <u>*deny use to those wishing to express less favored or more controversial views*</u>." *Police Dep't of the City of Chi. v. Mosley*, 408 U.S. 92, 96 (1972) (emphasis added); *see also Carey v. Brown*, 447 U.S. 455, 461-62 (1980) (discriminating among speech-related activities in a forum violates the Equal Protection Clause). That is precisely what happened in this case.

---

should instead seek relevant similarity."). The "relevant similarity" here is posting signs or flyers in violation of the City Ordinance.

C.    **Fourth Amendment: Excessive Force.**

To determine whether law enforcement officers used constitutionally unreasonable and thus excessive force in the course of an arrest, the Ninth Circuit employs a three-step analysis. *Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003). First, the Court assesses "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id.* at 964. Second, the Court assesses "the importance of the government interests at stake" by evaluating the factors set forth in *Graham v. Connor*, 490 U.S. 386 (1989). These factors include: (a) the severity of the crime at issue; (b) whether the suspect posed an immediate threat to the safety of the officers or others; and (c) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Third, the Court considers the totality of the circumstances and weighs the gravity of the force/intrusion against the government's interest to determine whether the force used was constitutionally reasonable. *Miller*, 340 F.3d at 964. This inquiry, however, "is not limited to the specific *Graham* factors, . . . [the court] must look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*, and then must consider 'whether the totality of the circumstances justifies a particular sort of seizure.'" *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (quoting *Graham*, 490 U.S. at 396); *see also Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1292 (D. Idaho 2011) (describing the analysis for resolving excessive force claims).

Upon the arrival of the defendant police officers, Defendants Gunderson and Nunes forcefully placed Rory in handcuffs, forced him to the ground, and proceeded to interrogate him. Rory was not free to leave, and yet the officers did not advise him of his rights required by *Miranda* before interrogating him. (SAC ¶ 38). In consideration of the alleged crime (posting non-damaging, Soviet Moscow protest decals on poles, a practice long permitted by the City), the threat

to the officers (none, as Rory, a youth, was unarmed, and he was obedient and respectful throughout), the fact that Rory was not resisting arrest, and in light of the totality of the circumstances—including the fact that the officers were harassing and retaliating against Rory due to his speech critical of the City—the force used by Defendants Gunderson and Nunes against this youth was excessive. (SAC ¶¶ 39, 85-89). The officers handcuffed Rory at approximately 19 seconds into their conversation, and this fits Rory's description of events and not the description offered by the officers during the state court proceedings. The handcuffing was punitive and an intimidation technique to compel Rory to speak during the interrogation, as was keeping him squatting against a wall when they finally removed the handcuffs. (SAC ¶ 92).

The type and amount of force used against Rory when he was seized by City police officers assessed against the limited government interests at stake (*i.e.*, the "crime" was not severe, Rory posed no immediate threat to the safety of the officers or others, and Rory was not actively resisting arrest or attempting to evade arrest by flight) and in light of the totality of the circumstances as set forth in the Second Amended Complaint, the force employed by Defendants against Rory was not constitutionally reasonable, in violation of the Fourth Amendment. *See generally Vangilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (holding that an excessive force claim under § 1983 may proceed despite conviction for resisting a law enforcement officer).

### D.    Coerced Interrogation: Fifth Amendment and Due Process.

Plaintiffs agree with Defendants that *Vega v. Tekoh*, 597 U.S. 134 (2022), forecloses a § 1983 claim brought directly for a violation of *Miranda*. However, "[c]oercing witnesses to speak . . . is a genuine constitutional wrong . . . . Overbearing tactics violate the right of the person being interrogated to be free from coercion." *Buckley v. Fitzsimmons*, 20 F.3d 789, 794 (7th Cir. 1994). Here, Defendants coerced incriminating statements from Rory and Seamus without advising them

- 18 -

of their rights under *Miranda*, and these statements were used in a criminal case in violation of the Fifth and Fourteenth Amendments. Defendant Waters, acting on personal prejudice in reaction to the free speech exercised by Plaintiffs, and with a retaliatory intent, harassed and intimidated Seamus, failed to give him *Miranda* warnings prior to conducting a custodial interrogation while knowing that Seamus was not free to leave, suppressed exculpatory evidence, and testified falsely at a suppression hearing, all of which eventually led to the charging/prosecutions of Plaintiffs. More specifically, Defendant Waters falsely testified that he only asked Seamus for his name, age, and parents' phone number (video shows a much longer interrogation). He also falsely testified that he never swore at Seamus and never would swear at a minor. In fact, after learning that Seamus was a minor, Defendant Waters swore at him, threatened to hold him indefinitely, reiterated that he was not free to leave, told him that he had committed a felony and was now required by law to tell him everything if he didn't want to be locked up and held as long as the officer pleased. Defendant Waters also falsely testified that he never told Nathan that he disagreed with the messaging of the decals. And he falsely testified that the boys never offered to remove the decals (after the boys had been falsely told that placing them on the poles was a felony).[16] It is convenient for Defendants that the audio of the encounter with Plaintiffs is strangely missing. And after a disagreement with Nathan about the messaging of the decals used by Rory and Seamus, Defendant Waters falsely accused Nathan of criminality resulting in the prosecution of Nathan by the City and its officials. And when Defendant Waters delivered the citations to Plaintiffs, he confirmed with Nathan that his invoking of his Fifth Amendment right to remain silent was

---

[16] Providing false testimony in a prior state court proceeding negates any preclusive effect of those proceedings. *See, e.g., Hardesty v. City of Ecorse*, 623 F. Supp. 2d 855, 859-60 (E.D. Mich. 2009) ("Viewing the evidence in the light most favorable to Plaintiff as the nonmovant, Plaintiff has set forth sufficient evidence to preclude the application of collateral estoppel" in that "Plaintiff has set forth evidence suggesting that [the defendant] supplied false information to the state court. . . .").

evidence of his guilt. Consequently, Nathan's exercise of his Fifth Amendment right was relied upon by Defendants to issue, and served as the primary basis for issuing, the formal citation against him. In sum, these blatant violations of the Fifth Amendment, including the use of coercive tactics and providing false testimony in a criminal proceeding violate the fundamental right to due process. (SAC ¶¶ 81-85).

## IV.    The Defendant Officers Do Not Enjoy Qualified Immunity.

Qualified immunity does not shield the defendant police officers from liability in their individual capacities for violating Plaintiffs' clearly established rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (stating that government officials are protected from personal liability only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Case law clearly established Plaintiffs' right to be free from retaliation (arrest, citation, and prosecution) for their protected speech, thereby negating any claim of qualified immunity. *See, e.g., Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821-25 (6th Cir. 2007) ("Because retaliatory intent proves dispositive of Defendants' claim to qualified immunity, summary judgment was inappropriate."); *see also Lozman*, 585 U.S. at 101 ("Lozman need not prove the absence of probable cause to maintain a claim of retaliatory arrest").

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER          MAGYAR, RAUCH & ASSOCIATES, PLLC

/s/ *Robert J. Muise*                               /s/ *Greg Rauch*
Robert J. Muise, Esq. (P62849)*              Greg Rauch (ISB 7389)
P.O. Box 131098                                      326 E 6th Street
Ann Arbor, Michigan 48113                    Moscow, Idaho 83843
Tel: (734) 635-3756                                (208) 882-1906
Fax: (801) 760-3901                               rauch@mralegal.com
rmuise@americanfreedomlawcenter.org      *Local Counsel for Plaintiffs*
 * Admitted *pro hac vice*
 *Counsel for Plaintiffs*

- 21 -

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system.  Parties may access this filing through the court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

AMERICAN FREEDOM LAW CENTER

/s/*Robert J. Muise*
Robert J. Muise, Esq.