UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATHAN DAVID WILSON, SEAMUS JAMES WILSON, and RORY DOUGLAS WILSON,<br><br>      Plaintiffs,<br><br>v.<br><br>CITY OF MOSCOW, et. al.,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 3:22-cv-00421-BLW |

## INTRODUCTION

Before the Court is Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 49). For the reasons set out below, the Court will partly grant and partly deny the motion.

## BACKGROUND

This case arises from charges of unlawful stickering brought against Nathan Wilson and his sons Rory and Seamus Wilson for an incident that occurred in Moscow, Idaho, in October 2020. The following facts are taken from the Second Amended Complaint, Dkt. 48, and are presumed true at this stage.

### 1. The Stickers

The Wilsons are members of Christ Church, a conservative and controversial

church based in Moscow. During the COVID pandemic, tensions arose between Christ Church and local law enforcement over lockdown measures. In September 2020, Christ Church's pastor (the grandfather of Rory and Seamus) organized a Psalm singing protest against COVID restrictions. Some participants were arrested, though those charges were later dropped. In the aftermath of the protest, Nathan Wilson helped create decals criticizing Moscow's COVID policies. The decals were 3-inch and 8-inch vinyl stickers that read "SOVIET MOSCOW: ENFORCED BECAUSE WE CARE," in reference to the City's pandemic slogan.

On October 6, 2020, Rory and Seamus, then ages 18 and 14, were out posting the stickers on City property such as light poles and street signs, primarily in spots that had other stickers and fliers. They wore hijabs for this outing to protest Moscow's mask mandate because, in their words, "if they were going to be oppressed, they wanted to look oppressed." Dkt. 48 ¶ 37. Someone reported them to the police.

Three officers, Defendants Gunderson, Nunes, and Waters, arrived on the scene as Rory and Seamus were walking away. When summoned by the officers, the teenagers approached cooperatively. Officers Gunderson and Nunes handcuffed Rory and forced him to the ground, while Officer Waters placed Seamus on the hood of the squad car a short distance away. Both were questioned without receiving *Miranda* warnings.

MEMORANDUM DECISION & ORDER - 2

The officers then called Nathan Wilson. When he arrived, Officer Waters criticized the decals' message and initially refused to allow Mr. Wilson to approach his sons. Officer Waters also asked if Mr. Wilson was involved with the stickers, and Mr. Wilson said that he would "plead the Fifth on that one." Dkt. 48 ¶ 43. Rory and Seamus were eventually released into Mr. Wilson's custody.

Shortly after the incident, City workers removed the "Soviet Moscow" stickers from the downtown area. The workers did not remove any other stickers or posters, including those with liberal political messages and those directly attacking Christ Church. The stickers left up by the City included messages such as "F*** Christ Church," "All Kirkers Are Bastards" (referencing a local nickname for Christ Church members), and "NSA GET OUT" (referencing a college associated with Christ Church). After criticism for this selectivity, the City dispatched another crew in March 2021, which removed more stickers from public property but still left in place some materials criticizing Christ Church. Such postings have continued in the subsequent years without any response by the City.

## 2. State Prosecutions

In late 2020, Mr. Wilson, Seamus, and Rory learned that they were each being charged with violating City Code 10-1-22, which prohibits posting messages on public property without written government approval. Specifically, the ordinance provides in relevant part:

No notice, sign, announcement, or other advertising matter shall be posted on public property or public right-of-way without prior approval, in writing, from the governmental entity owning or controlling such public property or public right-of-way. This provision shall not apply to property or areas which have been otherwise specifically approved for posting of notices, signs, announcements, or other advertising or similar matter by the City . . . .

Rory's case proceeded first. He sought to dismiss the charge on several constitutional grounds, including that the ordinance violated the First Amendment and that he was being selectively prosecuted for his religious and political views. The state trial judge rejected these arguments, *see* Dkt. 49-7, and the case went to trial in May 2022 in Magistrate Court. Rory was found guilty of one count of violating City Code 10-1-22. The court granted him a withheld judgment.

Rory's case was the only one to result in a conviction. Latah County dropped the juvenile charges against Seamus after he agreed to write a paper about civil disobedience. Shortly after Rory's trial, the charges against Mr. Wilson were also dropped with no explanation.

Rory unsuccessfully appealed his conviction to the Latah County District Court and the Idaho Court of Appeals. The Idaho Supreme Court and U.S. Supreme Court both declined to review the case. He subsequently moved the trial court to dismiss his withheld judgment pursuant to Idaho Code § 19-2604, which allows the court to set aside a defendant's conviction in some circumstances. In September 2025, the state court filed an Amended Notice of Dismissal, setting

aside the finding of Rory's guilt and dismissing the case. *See* Dkt. 52-1.

### 3. Federal Civil Proceedings

In October 2022, while Rory's initial appeal was pending, the three Wilsons filed the present lawsuit against the City of Moscow and several law enforcement officers. The Wilsons bring § 1983 claims for (1) prior restraint on speech and First Amendment retaliation, (2) viewpoint discrimination in violation of the First and Fourteenth Amendments, (3) selective enforcement in violation of the First and Fourteenth Amendment, (4) Fifth Amendment *Miranda* violations, and (5) excessive force in violation of the Fourth Amendment.

This Court initially decided to abstain from considering most of the Wilsons' claims while Rory's appeal was pending because such a decision would improperly interfere with ongoing state criminal proceedings under *Younger v. Harris*, 401 U.S. 37 (1971). Except for the excessive force claim, the Court dismissed all claims for declaratory and injunctive relief and stayed claims for damages. The parties then stipulated to a full stay of the case.

The Court lifted the stay in May 2025 after Rory's petition for writ of certiorari was denied. The Wilsons then filed their Second Amended Complaint, which reasserts requests for declaratory and injunctive relief, in addition to damages, on all claims. Defendants now move to dismiss the Second Amended Complaint.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction over a claim. "[T]he party asserting subject matter jurisdiction has the burden of proving its existence." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). A jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack asserts that allegations fail on their face to invoke federal jurisdiction, while a factual attack disputes the truth of the allegations. *Id.*

Rule 12(b)(6), on the other hand, concerns the substantive quality of the pleading. To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 570. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. When assessing the plausibility of a plaintiff's claim, a court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

**ANALYSIS**

The Wilsons seek damages and injunctive and declaratory relief for claims of prior restraint on speech, First Amendment retaliation, viewpoint discrimination, selective enforcement, excessive force, and violations of the Fifth Amendment privilege against self-incrimination. Defendants argue, first, that the claims for injunctive and declaratory relief are prohibited based on *Rooker-Feldman* doctrine and collateral estoppel because the Wilsons are seeking to relitigate the state's criminal case against Rory. As far as the claims for damages, Defendants contend that collateral estoppel also bars the selective prosecution claim and that the others fail as a matter of law for various reasons. As set out below, the Court will dismiss the First Amendment prior restraint claim brought by Rory, the excessive force claim, and the Fifth Amendment claims brought by Rory and Seamus. All other claims may proceed.

1. **Rooker-Feldman Doctrine**

Defendants contend that this Court lacks jurisdiction over the claims for injunctive and declaratory relief because the Wilsons effectively seek review of the state court's judgment against Rory. This, they say, is prohibited under *Rooker-Feldman*. Defendants misunderstand the nature of the Wilsons' claims.

*Rooker-Feldman* doctrine stems from the principle that federal district courts do not have jurisdiction to review the judgments of state courts. Thus, district

courts may not take up "challenges to state court decisions . . . even if those challenges allege that the state court's action was unconstitutional." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). This prohibition extends to "de facto appeals," where constitutional claims raised in the federal action are "inextricably intertwined" with the state court's judgment. *Bianchi v. Rylaarsdam*, 334, F.3d 895, 898 (9th Cir. 2003). At the same time, overlapping state and federal litigation is a "deeply rooted" feature of our legal system, and a federal court is not deprived of jurisdiction merely because a state court has previously taken up the same issue. *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003). To distinguish permissibly overlapping litigation from a forbidden de facto appeal, the Ninth Circuit has articulated a straight-forward rule: "It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Id.* at 1163.

The Wilsons are not seeking relief from the state court judgment. To start, two of the three plaintiffs were not even parties to the state court action. And though Rory's claims overlap with issues raised in the state's criminal case, he does not seek relief from the judgment of the state court (a judgment that has now been set aside, *see* Dkt. 52). He requests, rather, prospective relief pertaining to the enforcement of the allegedly unconstitutional ordinance. Dkt. 48 ¶¶ 94-123. This is

analogous to *Wooley v. Maynard*, 430 U.S. 705 (1977), where the plaintiff sought declaratory and injunctive relief from a New Hampshire law requiring the display of the state's "Live Free or Die" motto on license plates. *Id.* at 707-08. That plaintiff had previously been convicted in state court of violating the license plate law, but the Supreme Court nonetheless allowed his federal challenge to proceed because the suit was not "designed to annul the results of a state trial." *Id.* at 711. Here, likewise, Rory "seek[s] only to be free from prosecutions for future violations of the statutes." *Id.*

As a result, this Court has jurisdiction over the claims for declaratory and injunctive relief. To the extent that the state court has already addressed issues presented in this action, the correct framework is collateral estoppel, which the Court will analyze next. *See Noel*, 341 F.3d at 1160-61.

## 2. Collateral Estoppel

Defendants argue that the Wilsons' requests for injunctive relief, as well as several of their claims for damages, are barred by collateral estoppel because the state court considered and rejected identical challenges in the criminal case against Rory. Under the Federal Full Faith and Credit statute, a federal court must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1230 (9th Cir. 2014) (quotation omitted). Thus,

Idaho's preclusion law governs this analysis. *See Bias v. Brown*, No. 4:19-cv-00280, 2021 WL 2228491, at *7 (D. Idaho June 1, 2021).

As the Idaho Supreme Court has explained, "[i]ssue preclusion protects litigants from litigating an identical issue with the same party or its privy." *Ticor Title Co. v. Stanion*, 157 P.3d 613, 617 (Idaho 2007). The following five requirements must be met:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id.* at 618.

Here, a threshold matter is whether the state court judgment continues to have preclusive effect after the finding of guilt has been set aside and the case dismissed pursuant to Idaho Code § 19-2604. This appears to be a somewhat novel statutory question, but related decisions by the Idaho Supreme Court are instructive. That court has emphasized that § 19-2604 "never states that a guilty plea or judgment disappears, only that the plea or conviction is 'set aside' and the case dismissed." *State v. Glenn*, 319 P.3d 1191, 1194 (Idaho 2014). This is because dismissal under the statute reflects the defendant's rehabilitation rather than any deficiency with the proceedings—it "is an exercise of leniency by the court,

notwithstanding the defendant's actual guilt of the charged offense." *State v. Parkinson*, 172 P.3d 1100, 1103 (Idaho 2007). Thus, the court explained, "[a] conviction is not entirely erased." *Id.* This interpretation of § 19-2604—binding in the present context—indicates that the trial court's decision in Rory's case continues to have preclusive force despite the Amended Order of Dismissal.

Therefore, the Court now turns to the five-element preclusion analysis. For the claims brought by Seamus and Nathan Wilson, there is no serious argument for preclusion because their criminal cases were dismissed, and neither was in privity with Rory. *See Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp. 3d 1162, 1167 (D. Idaho. 2017) (setting out privity requirements). Rory's claims, however, present a more difficult question. Although Defendants' briefing is not always a model of clarity, they appear to suggest that collateral estoppel fully bars his First and Fourteenth Amendment challenges.[1] *See* Dkt. 49-1 at 10-14. These claims, in turn, break down into five issues: (1) First Amendment prior restraint, (2) First Amendment retaliation, (3) First Amendment selective enforcement, (4) Fourteenth Amendment selective enforcement, and (5) Fourteenth Amendment viewpoint discrimination. The Court concludes that only Rory's prior restraint argument is precluded due to the state court judgment.

---

[1] Defendants also briefly state that collateral estoppel bars Rory's Fifth Amendment claim. Because that claim independently fails as a matter of law, as explained below, the Court will not take up the under-developed collateral estoppel argument.

The prior restraint issue was fully and fairly litigated in Rory's criminal case; it was decided on the merits; and there was a final judgment on the merits. *See Mem. Decision Denying Def.'s Mtn. to Dismiss* at 12-17, Dkt. 49-7. In that regard, he is attempting to relitigate a question already resolved in the state proceedings, and further proceedings are inappropriate. The state court, however, did not rule on the issues of First Amendment retaliation or selective enforcement. And though the state court considered and rejected Rory's Fourteenth Amendment arguments, it did so based on a distinctly different factual record. The trial judge noted, for example, that "nothing in the record establish [sic] the Defendant is associated with 'Christ Church' or a 'Christian.'"[2] *Id.* at 19. Further, Rory's current Fourteenth Amendment claims reference an additional four years of enforcement activity, which the state court obviously could not consider. *See* Dkt. 48 ¶¶ 57-60. For these reasons, Rory did not have a "full and fair opportunity to litigate the issue," nor was the prior issue identical to one presented now. *See Ticor Title Co*, 157 P.3d at 617.

3. **First Amendment**

The Court now turns to Defendants' substantive arguments, beginning with

---

[2] The trial judge later denied a motion for reconsideration that raised newly discovered evidence consisting of text messages sent by the City's Prosecuting Attorney about the Wilsons' affiliation with Christ Church and her disapproval of the group. Dkt. 51 at 9. This means, according to Defendants, that the state court did ultimately consider the factual record before this Court. But the denial of a motion for reconsideration is not the same as an actual decision on the merits of an issue "identical" to one now raised.

the First Amendment claims. Aside from the jurisdictional and procedural arguments addressed above, Defendants do not appear to seek dismissal of the Wilsons' prior restraint claims. Therefore, Nathan and Seamus Wilson may proceed on this front.

As for the retaliation claims, Defendants seek dismissal because officials had probable cause to pursue the unlawful stickering charges. The Wilsons respond that probable cause is irrelevant because the retaliation reflected an official policy.

A plaintiff asserting a First Amendment retaliation claim must show that  (1) "he engaged in constitutionally protected activity," (2) "as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) "there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022). Usually, the third element requires the plaintiff to establish the absence of probable cause, with the logic that the existence of probable cause effectively disproves the casual connection. *Hartman v. Moore*, 547 U.S. 250, 252 (2006); *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019). This requirement, however, does not apply when a plaintiff sues a municipality based on an official retaliatory policy, rather than suing individual officers. *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018). As the Supreme Court explained, "An official retaliatory policy is a particularly troubling

MEMORANDUM DECISION & ORDER - 13

and potent form of retaliation, for a policy can be long term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer. An official policy also can be difficult to dislodge." *Id.* at 100. Because of this "compelling need for adequate avenues of redress," a plaintiff may maintain a retaliation claim against a municipality even if there was probable cause for his arrest or prosecution. *Id.* at 101. Thus, the Wilsons' claim against the City, which plausibly alleges an official policy of retaliation, may proceed. *See* Dkt. 48 ¶¶ 57, 61.

Another exception arises when a plaintiff alleges that he was arrested or prosecuted "when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. This typically occurs in the context of minor criminal violations, where "probable cause does little to prove or disprove the causal connection between animus and injury." *Id.* The Supreme Court has used jaywalking as an example:

> [A]t many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

*Id.*

The same can be said of the unlawful stickering charges brought against the Wilsons, and the Second Amendment Complaint makes extensive allegations about Moscow's disparate enforcement of City Code 10-1-22. *See* Dkt. 48 ¶¶ 29-

32, 45-48, 57-60. Perhaps, as the state trial court concluded, the Wilsons were just unlucky enough to get caught in the act, meaning they are not similarly situated to the many individuals who more surreptitiously engaged in the same conduct. But that is a factual question that cannot be determined at this stage of the proceedings. For now, the Wilsons have alleged plausible First Amendment retaliation against both the City and the individual police officers.

### 4. Fourteenth Amendment

Relatedly, Defendants ask the Court to dismiss the Fourteenth Amendment selective prosecution claims because the Wilsons have not alleged that they were treated differently than other similarly situated individuals. A Fourteenth Amendment selective prosecution claim requires a plaintiff to prove "that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (quotation omitted). As explained above, at this preliminary stage, the Wilsons have plausibly alleged that they received sharply disparate treatment compared to others who engaged in comparable conduct. Not only are they apparently the only people to ever be charged under City Code 10-1-22, but Moscow's own prosecuting attorney sent text messages belittling their religious beliefs and describing their protest activities as "bullsh*t." Dkt. 48 ¶ 61. This is enough for the claim to survive.

### 5. Excessive Force

Defendants next challenge the sufficiency of Rory Wilson's Fourth Amendment excessive force claim against Officer Gunderson and Officer Nunes.[3] Rory alleges that the officers handcuffed him and forced him to the ground. Dkt. 48 ¶ 38. This, he says, was excessive given that he was unarmed, obedient, and suspected of a minor, non-violent offense.

Police officers may use the degree of force that is objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). This analysis considers "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Lombardo v. City of St. Louis*, 594 U.S. 464, 468 (2021). Although injury is a factor, it is "not a precondition" to an excessive force claim. *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018).

Taking the allegations as true, Rory has stated a viable Fourth Amendment violation. He was a young, unarmed teenager engaged in the most trivial of offenses, and he responded cooperatively when approached by the officers. Under

---

[3] The Second Amendment Complaint sometimes suggests that the City is also a defendant for the excessive force claim, Dkt. 48 ¶ 131, but does not appear to make any argument for municipal liability. The Court will assume that Rory asserts the claim only against the individual officers.

these circumstances, the officers' decision to handcuff him and force him to the ground plausibly constituted unreasonable force.

More persuasively, Defendants argue that the officers are entitled to qualified immunity. The Supreme Court created qualified immunity to shield government officials from civil liability for rights violations if the right was not "clearly established" at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To qualify as "clearly established," a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The right must also be established at a reasonable level of specificity. Though a case "directly on point" is unnecessary, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In the Ninth Circuit, it is clearly established that overly tight handcuffing can constitute excessive force. *Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003). But Rory does not allege that the handcuffs were too tight. His claim hinges simply on the handcuffing itself and being forced to the ground. Further, although he uses the term "forced," he does not suggest that the officers actually acted with any violence when making him sit on the ground. Plaintiffs have not cited, and the Court has not found, any case law clearly establishing that this sort of ordinary handcuffing can be excessive force. Accordingly, the officers are entitled to

qualified immunity, and the Court will dismiss the Fourth Amendment claim.

### 6. *Miranda* Violation

The Fifth Amendment claims brought by Rory and Seamus must also be dismissed.[4] Rory and Seamus allege that the officers engaged in a coercive custodial interrogation without providing them with *Miranda* warnings. But even if true, plaintiffs may not bring § 1983 lawsuits against officials for *Miranda* violations. *Vega v. Tekoh*, 597 U.S. 134, 138 (2022). *Miranda* established "prophylactic" rules to safeguard the constitution right against self-incrimination, but a violation of *Miranda* is not in itself a constitutional violation. *Id.* at 142.

Plaintiffs concede this point but say that the officers engaged in coercive tactics, beyond the alleged *Miranda* issues, that violated the Constitution. This argument appears to confuse the Fifth Amendment privilege against self-incrimination with due process protections against involuntary confessions. *See Michigan v. Tucker*, 417 U.S. 433, 441-42 (1974) (distinguishing Fifth Amendment *Miranda* rights from the due process rights against coercive interrogations). A coercive interrogation can violate Fourteenth Amendment due process rights, which in turn can support a § 1983 claim. But Rory and Seamus have not alleged a due process violation. To the contrary, the Second Amended

---

[4] Nathan Wilson brings his own Fifth Amendment claim, arguing that Defendants violated his right against self-incrimination by using his invocation of the Fifth Amendment against him when deciding to press charges. Dkt. 48 ¶ 127. Defendants do not address this in their Motion to Dismiss, so the Court will not take it up.

Complaint makes clear that their claims are grounded in the Fifth Amendment privilege against self-incrimination. This is forbidden under *Tekoh*. Accordingly, the Court will dismiss these claims.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 49) is **GRANTED IN PART and DENIED IN PART**. The First Amendment prior restraint claim brought by Rory Wilson is **DISMISSED**. The Fourth Amendment claim is **DISMISSED**. The Fifth Amendment claims brought by Rory and Seamus Wilson are **DISMISSED**. In all other respects, Defendants' Motion to Dismiss is **DENIED**.



DATED: November 20, 2025

B. Lynn Winmill
U.S. District Court Judge